THOMAS L. DAVIS ET AL., APPELLEES, IMPLEADED WITH WALTER DUDA, INTERVENER AND APPELLEE, V. THE CITY OF OMAHA, A MUNICIPAL CORPORATION, ET AL., APPELLANTS, IMPLEADED WITH THE KIEWIT COMPANY, A CORPORATION, ET AL., INTERVENERS AND APPELLANTS.

45 N. W. 2d 172

Filed December 20, 1950. No. 32884.

*Edward F. Fogarty, Edward Sklenicka, James M. Paxson,* and *Herbert M. Fitle,* for appellants.

*Fraser, Connolly, Crofoot & Wenstrand,* for interveners and appellants The Kiewit Company et al.

*G. M. Tunison* and *G. H. Seig,* for appellees.

*Jack W. Marer,* for intervener and appellee Duda.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by Thomas L. Davis and Bess B. Davis, plaintiffs and appellees, against the City of Omaha, a municipal corporation, and the members of the city council of said city, defendants and appellants, attacking the validity of two zoning ordinances adopted and promulgated by the city council. Walter Duda intervened on the side of plaintiffs and before this court he is an appellee. The Kiewit Company, a corporation, Leo A. Daly Company, a corporation, and G. E. Shukert intervened on the side of the defendants and here they are appellants.

The trial court at first decreed that one of the ordinances, designated as No. 16522, was void and in the light of the finding as to this one there was nothing to which to apply the other which was designated as No. 16521. Later the court decreed that the second "except as to its provisions as to height and set back restrictions, is null and void, * * *."

It is thought well to point out here that if the decree as to No. 16522 is sustained a consideration of No. 16521 will not be necessary since in the light of such a conclusion it would not present an issuable matter in this case.

From the decree in its final form the parties designated as appellants have brought the case here for review. The assignments of error are numerous and need not be detailed here since the gist of them all is that the two ordinances constituted a valid exercise of the zoning power of the city of Omaha and that the decree which found otherwise is erroneous.

As a background for a consideration of the questions

involved it is pointed out here that the city of Omaha was first granted power to zone the city in 1915. (Laws 1915, Chapter 213.) The provisions were amended in 1919. (Laws 1919, Chapter 185.) This power was amplified in 1925 (Laws 1925, Chapter 45) and the pertinent provisions as then enacted are the following:

"For the purpose of promoting the health, safety, morals or the general welfare of the community, the city council in a city of the metropolitan class is hereby empowered to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes. Such regulations may provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent, and in accordance with general or specific rules therein contained." § 14-401, R. S. 1943.

"For any or all of said purposes the city council may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of sections 14-401 to 14-418. Within such districts it may regulate, restrict or prohibit the erection, construction, and reconstruction, alteration or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in other districts." § 14-402, R. S. 1943.

"Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transpor-

tation, water, sewerage, schools, parks and other public requirements, and to promote convenience· of access. Such regulations shall be made with reasonable consideration, among other things, as to. the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate ·use of land throughout such municipality." § 14-403, R. S. 1943.

The first zoning ordinance was adopted in 1920. A later "comprehensive" zoning ordinance was adopted in 1924, another in 1942, another in 1945, and still another in 1948. The term "comprehensive" has been used freely in the record without exact definition but we take it from what has been said that it was designed to embrace all property within the city and to include all permissible areas outside with due consideration to its existing use and occupancy and the use to which it could feasibly and equitably be put comformable to the power contained in the statute. By these ordinances the areas were classified and assigned designations.

From the record it is made clear that through the succeeding comprehensive zoning ordinances changes were made to meet changing conditions. It is also made clear that quite frequently individual changes were made in zoning which did not comprehend the entire city but which were contemplated to respond to local necessity or desirability.

The issues here involve ordinances the design of which is to bring about local departure from the "comprehensive" zoning ordinance adopted in 1948.

From the beginning of zoning up to 1945 the area bounded on the north by Farnam Street, on the east by Thirty-sixth Street, on the south by Leavenworth Street, and on the west by Fortieth Street, except about a half block on the south side of Farnam Street and likewise a half block on the north side of Leavenworth Street, and possibly another area so far from the location in question that it can have no bearing on the de-

termination of the issues involved here, was classed as residence property. In 1945 however the area was given new classifications. The new classifications, with some changes, were apparently carried into the "comprehensive" zoning of 1948. By that zoning the area was placed in residence zones 7 and 8. This of course did not affect the nonconforming structures in the area which had been erected before zoning of which there were a few.

By this zoning the single family residences in zone 7 were allowed to be divided into not to exceed six apartments or family units provided there was at least 3,000 square feet of ground space for each unit and provided that no material change was made in the exterior of the building. In zone 8 the erection of apartments not to exceed 65 feet in height was permitted.

The area out of which this action arises is what is known as Block 9, West Omaha Addition. It is bounded on the north by Jackson Street, on the east by Thirty-seventh Street, on the south by Jones Street, and on the west by Thirty-eighth Street. Thus it is one block from Leavenworth Street, two blocks from Farnam Street one of which blocks is extremely long, one block from Thirty-sixth Street, and about three blocks from Fortieth Street. The block in its entirety was in zone 7. It was surrounded on all four sides by properties which were in zones 7 and 8 most of which were in zone 7.

The "comprehensive" ordinance of 1948 classified parts of the city as zone 9. None of these zones was in the area described or near it. In zone 9 apartments of the height of 105 feet were permissible. Business or commercial establishments were not permissible in such buildings.

On January 10, 1950, the city council of the city of Omaha adopted ordinances Nos. 16521 and 16522. Ordinance No. 16521 provided among other things not necessary to be mentioned here that buildings in the 9th zone could have a height of 165 feet with not to exceed 15

stories and that the buildings could contain retail stores or restaurants when operated in connection with and as a part of the hotel or apartment, provided the entrances thereto were either inside the building or from a court.

By ordinance No. 16522 this one block was rezoned and placed in the zone 9 classification.

The appellees substantially contended in the district court, which contention is renewed here, that these ordinances were void for the reason that they were violative of the statutes pertaining to and granting to the city of Omaha the power to zone the city and its environs and for the reason that no due regard was given to the area, the character of the property in the area, and the preservation of the uses and values of the property in the area.

As already indicated ordinance No. 16522 must receive first consideration. This is true since if the transfer of this block from zone 7 to zone 9 is void the question of whether or not the changes sought to be accomplished by ordinance No. 16521 has no pertinence.

In the approach to a determination of the question of whether or not ordinance No. 16522 is invalid it appears proper to set forth certain fundamental principles relating to the subject of zoning by a city.

As pointed out the statutes of this state permit the zoning of property in the city of Omaha. §§ 14-401, 14-402, and 14-403, R. S. 1943.

The zoning of property is permissible under the police power and the exercise of the power to zone may not be denied on the ground that individual property rights may be adversely affected thereby. Dundee Realty Co. v. City of Omaha, 144 Neb. 448, 13 N. W. 2d 634.

The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary. Pettis v. Alpha Alpha Chapter of Phi Beta Pi, 115 Neb. 525, 213 N. W. 835; Dundee Realty Co. v. City of Omaha, *supra;* Cassel Realty Co. v. City of

Omaha, 144 Neb. 753, 14 N. W. 2d 600; City of Omaha v. Glissmann, 151 Neb. 895, 39 N. W. 2d 828.

In zoning what relates to the public good is a question primarily for determination by the zoning authority and in the absence of violation of law or unreasonable or arbitrary action its determination will be allowed to control. Pettis v. Alpha Alpha Chapter of Phi Beta Pi, *supra*.

These principles have become crystallized in this jurisdiction by the opinions and decisions cited wherein, as examination will disclose, the opinions of the courts of other jurisdictions dealing with the subjects were carefully considered.

Referring now to the sections of the statutes quoted it is observable that along with the power granted to zone there are also restrictions and limitations upon that power. Section 14-401 may well be said to be a grant of power. Section 14-402 likewise may be said to be for the most part a grant, however it does contain a restriction and limitation. The restriction is that "All such regulations shall be uniform for each class or kind of buildings throughout each district, * * *." Section 14-403 in its entirety is restrictive and limiting.

According to the mandate of this section the zoning of any area must (1) follow a comprehensive plan and a design to lessen congestion in the streets; (2) it must pursue a design to secure safety from fire, panic, and other dangers; (3) it must be calculated to promote health and the general welfare; (4) it must provide adequate light and air; (5) it must be designed to prevent overcrowding of the land; (6) it must be calculated to avoid undue concentration of population; (7) it must comprehend the facilitation of adequate provision of transportation, water, sewerage, schools, parks, and other public requirements and promote convenience of access; and (8) the regulations must be made with reasonable consideration for the character of the district and its peculiar suitability for particular uses, and with a view

to conserving the value of buildings and encouraging the most appropriate use of land throughout the city.

What these ordinances, on their faces, were designed to accomplish has been pointed out. Factually however their design was to place this one block in zone 9 with no other part of the city within quite a number of blocks in a like or similar zone for the single purpose of allowing the parties hereto who intervened on the side of the defendants to erect on this plot two buildings of a proposed height of about 119 feet containing more than 400 small units of space for family occupancy, or in other words apartment houses containing more than 400 apartments. Also car storage or garage space inside and outside was to be provided for 80 percent of the units or apartments. More than half of this was to be provided for in the open at or above the level of the ground. The outside parking space was to be kept lighted throughout the night. The entrance to the inside parking or storage was to be on the east side of the block and the outside the opposite. This was to be allowed on a block which previous to the adoption of the ordinance would permit of a maximum of 30 family occupancy units. There were and are five houses on the block and the previous ordinance permitted each to be divided into, under conditions already referred to, a maximum of six units each.

The streets around the block are 30 feet in width as is also true of the other streets within the surrounding area. The properties which surround the block except certain properties which are occupied by nonconforming structures erected before zoning and by structures erected by permission of zone 8 regulations have on them large, old, and valuable and well-kept single family residences or such residences converted to multiple family residences agreeable to the provisions relating to zone 7.

A considerable number of the owners of adjoining property presented themselves in opposition to this zoning on the ground that it would damage and destroy

the value and the use and utility of their property and grounds and that of the area. None has come forward favoring it.

That the properties in the vicinity are valuable is true is undeniable as is borne out by evidence that the interveners on the side of the defendants have purchased part of this block and have options to purchase the remaining parts at a total cost of $145,000, and further evidence that the adjoining property is not less valuable.

In the light of the statutes, the stated legal principles, and what has been set forth with regard to the facts, which statement it is thought reflects essentially the factual picture upon which the determination herein must depend, it must be ascertained whether or not the ordinances in question are vulnerable to the attack made upon them by the appellees.

By way of application of section 14-403, R. S. 1943, to the disclosed situation this zoning action clearly did not follow a comprehensive plan. It applied to only one block among several whose condition, position, and relation to each other was the same or similar.

It could not operate to lessen congestion in the streets. It could have only the opposite effect. By it the design was to make possible more than 400 family units where previously only a maximum of 30 was possible. Provision was also made for storage and parking of automobiles for 80 percent of the more than 400 families whereas previously only the number sufficient to satisfy the needs and desires of the 30 could be expected to be upon the block.

Whether or not due regard was given to the matter of safety from fire, panic, and other dangers is by the record left in the field of conjecture. There is little information of value as regards this in the record. One witness however did testify that because of the elevation of this area and the height of the pumping station serving it present water pressure is only sufficient to

permit water to flow from one faucet at a time on the third floor of his home.

As to light and air there is a wide difference of opinion as to whether or not it would be adequate. It appears reasonable to conclude that for the purposes of health this would not materially affect the health of the people living in the surrounding area. It would of course cut off sunlight very materially from property to the north and to some extent from property to the east and west. The greatest effect in this respect would probably be in relation to the uses of the grounds surrounding the buildings on the adjacent properties.

That there would be crowding of the land there can be little question. Whether the terminology of the statute was meant to embrace the surrounding area or only the area zoned is none too clear but we infer that it has reference to a prospective condition which of course would cause it to contemplate the two areas. If undue congestion were brought about it appears reasonable to say that there would be overcrowding within the meaning of the statute.

Whether or not this would cause undue concentration of population would depend upon many things including congestion of streets, safety, health, light, air, transportation, convenience, and availability of land for the city or community housing needs. Most of these elements have been considered separately herein.

That this location would be convenient for the purposes of those seeking to build upon the zone or block there can be no doubt. There is no doubt also that it would be a convenient location for the prospective occupants. It cannot be said however that reasonable necessity requires that this block be made available for the erection of these structures. The record abundantly discloses that there are other areas not great distances from this area classified as zone 9 where these contemplated structures could be erected. The summary of the objection to the other locations is not that the other

locations are not available but that this one is aesthetic-
ally and economically more desirable to those who would
build.

The zone of which this block was a part before re-
zoning has been described. It is difficult if not impos-
sible to see how it can be said that the defendants in
rezoning took into reasonable consideration the character
of the district and its suitability for particular uses with
a view to conserving the value of buildings and encour-
aging the most appropriate use of lands throughout the
city. Instead if the testimony of the witnesses for the
plaintiffs and at least one for the defendants is to be
regarded as of value a reasonable conclusion is that
the effect of this rezoning would produce a trend toward
abandonment and destruction of these valuable old prop-
erties rather than the conservation of their values.

By the record it is made to appear that the city council
by ordinance No. 16522 regarded only the bare zoning
power conferred upon it by the statutes and gave scant
regard to the restrictions, limitations, and inhibitions
upon that power contained in the same statutes. In this
view it is concluded that the rezoning of the block in
question was an unreasonable and arbitrary exercise of
zoning power and that therefore the ordinance so re-
zoning it is void.

This conclusion renders unnecessary and improper a
consideration of the validity of ordinance No. 16521.
With this conclusion and determination the validity of
ordinance No. 16521 ceases to be an issuable matter in
this action.

The original decree of the district court is affirmed.
The supplemental decree is reversed and declared of
no effect.

AFFIRMED IN PART, REVERSED IN PART.