WALTER W. WEBER ET AL., APPELLANTS, V. CITY OF GRAND ISLAND, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

87 N. W. 2d 575

Filed January 17, 1958. No. 34269.

*Cunningham & Cunningham,* for appellants.

*Carl E. Willard,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs, who are appellants here, filed a petition in the district court for Hall County upon appeal from affirmative rezoning action taken by the Grand Island board of adjustment. Plaintiffs sought to have such action and Grand Island rezoning ordinance No. 3263, which established such rezoning, declared illegal and void for failure to give notice as required by law, and upon the ground that such rezoning action and ordinance were arbitrary, unreasonable, discriminatory, and illegal spot zoning. Defendants, who are appellees here, answered, denying generally. At conclusion of plaintiffs' evidence and again at conclusion of all the evidence, defendants' motions to dismiss were overruled. However, after submission of briefs and argument by counsel, a judgment was rendered finding and adjudging that the action of the city in rezoning the property involved was not arbitrary, unreasonable, or discriminatory, and that the ordinance establishing the rezoning was valid. It denied plaintiffs' petition and taxed costs to plaintiffs. Subsequently, plaintiffs' motion for new trial was overruled and they appealed, assigning in substance that the judgment was not supported by the evidence but was contrary thereto and contrary to law. We sustain the assignment.

As held in Frank v. Russell, 160 Neb. 354, 70 N. W. 2d 306: "In a review on appeal of the action of a board of adjustment granting a variation from the provisions of a zoning ordinance, the decision of the board will not be disturbed unless it is found to be illegal or from the standpoint of fact it is not supported by evidence, or is arbitrary and unreasonable, or is clearly wrong."

In Wagner v. City of Omaha, 156 Neb. 163, 55 N. W. 2d 490, we held that: "The power conferred upon municipal corporations by their charters to enact ordinances

on specified subjects is to be construed strictly, and the exercise of the power must be confined within the general principles of the law applicable to such subjects.

"The burden is on one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity."

Also, in Peterson v. Vasak, 162 Neb. 498, 76 N. W. 2d 420, we held: "A city is a political subdivision of the state, created as a convenient agency for the exercise of the governmental powers of the state that are entrusted to it by constitutional provision or legislative enactment.

"A municipality has no inherent power to enact a zoning ordinance. Its authority to do so results from statutory or constitutional authorization.

"The governmental authority known as the police power is inherently an attribute of state sovereignty and belongs to subordinate governmental subdivisions when and as conferred by the state by its Constitution or legislation."

Also, in Dundee Realty Co. v. City of Omaha, 144 Neb. 448, 13 N. W. 2d 634, we held: "What is the public good as it relates to zoning ordinances affecting the use of property is, primarily, a matter lying within the discretion and determination of the municipal body to which the power and function of zoning is committed, and unless an abuse of this discretion has been clearly shown it is not the province of the court to interfere.

"In determining the validity of a city ordinance, regularly passed in the exercise of police power, the court will presume that the city council acted with full knowledge of the conditions relating to the subject of municipal legislation.

"In passing upon the validity of zoning ordinances, an appellate court should give great weight to the determination of local authorities and local courts especially familiar with local conditions.

"In appeals from the district court to the supreme court in suits in equity, on trial de novo this court will

retry the issue or issues of fact involved and reach an independent conclusion as to what findings are required under the pleadings and the evidence, without reference to the conclusion reached in the district court." Also, as said in that opinion: "The question of the validity or invalidity of a zoning ordinance presents a question to be determined on examination of the facts in each particular case presented. On this proposition the law is well settled."

See, also, Cassel Realty Co. v. City of Omaha, 144 Neb. 753, 14 N. W. 2d 600, wherein we said: "We come to a determination of the question of whether or not the zoning ordinance in question is unreasonable, arbitrary and confiscatory in its application to the plaintiff and its property hereinbefore described. Whether or not it is unreasonable, arbitrary and confiscatory must be determined by the evidence of the special surrounding conditions and circumstances. In City of Lincoln v. Foss, supra, a case dealing with a zoning ordinance, it was said: 'It is difficult, if not impossible, to lay down any general rules describing the exact field of operation of such power that will fit cases arising in the future. Each must be controlled by the special conditions and circumstances surrounding it.' "

As held in Davis v. City of Omaha, 153 Neb. 460, 45 N. W. 2d 172: "The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary.

"In zoning what relates to the public good is a question primarily for determination by the zoning authority and in the absence of violation of law or unreasonable or arbitrary action its determination will be allowed to control.

"The courts will in an appropriate action instituted for that purpose declare invalid a zoning ordinance where it is made to appear that such ordinance is unreasonable and arbitrary."

Also, as held in Graham v. Graybar Electric Co., 158

Neb. 527, 63 N. W. 2d 774: "The validity or invalidity of spot zoning depends upon more than the size of the spot."

It is generally agreed that spot zoning as such is not necessarily invalid, but its validity depends upon the facts and circumstances appearing in each particular case. Spot zoning has generally been defined as the singling out of a small parcel of land for a use or uses classified differently from the surrounding area, primarily for the benefit of the owner of the property so zoned, to the detriment of the area and other owners therein.

As stated in Annotation, 51 A. L. R. 2d § 2, p. 266, citing and discussing many authorities: "The most widely accepted tests of validity, sometimes stated or applied in combination, sometimes separately, are whether or not the ordinance is in accordance with a comprehensive plan of zoning, a requirement generally imposed by the enabling statutes, and whether or not it is reasonably designed to promote the general welfare, or other objectives specified in the enabling statutes, rather than merely to benefit individual property owners, or to relieve them from the harshness of the general regulation as applied to their property." As stated in § 4 (b), p. 274: "It has been frequently stated, and is generally recognized, that a 'spot zoning' ordinance (using the term in its descriptive sense) can be justified only when it is in accordance with a comprehensive plan of zoning which is designed to promote the general welfare, or other statutory objectives." And as stated in § 11 (a), p. 289: "Largely on the ground that they were not enacted in pursuance of any general or comprehensive zoning plan, zoning enactments giving a less restricted classification to small areas located within more restricted districts have been held illegal and void in a number of cases."

As stated in 62 C. J. S., Municipal Corporations, § 226 (12), p. 467, citing many authorities: "A change or amendment of regulations involving only a single or

very few properties, and removing therefrom restrictions imposed on surrounding property, may be invalid as improper spot zoning except where the change is reasonably related to the public welfare."

In the light of such rules we have examined the record. The facts were established in large part by records of the city, about which there is no dispute, and other evidence offered by plaintiffs, including numerous photographs of the surrounding area.

The city of Grand Island is a city of the first class. With regard to rezoning, it is governed by sections 19-901 to 19-914, R. R. S. 1943. In that respect, section 19-904, R. R. S. 1943, as applicable here, was amended by Laws 1955, chapter 57, section 1, page 185, and now appears as section 19-904, R. S. Supp., 1955. On December 17, 1947, general zoning ordinance No. 2162 was passed by the city. Section II thereof provided regulations and restrictions as authorized by the foregoing statutes for the location of trades and industries; regulated and limited the height and bulk of buildings; regulated and determined the area of yards, courts, parking areas, and other open spaces about buildings, and the density of population; and divided the city into " 'Use and Height Districts' " of which there were five, to wit: "A - Residence District, B - Residence District, A - Business District, B - Business District, Industrial District." An official map or plat attached to and made a part of the ordinance shows the particular classifications of all areas in the city, including the "B - Residence District" area here involved.

On November 20, 1956, Herbert V. Roeser filed an application with the city, requesting it to rezone the north half of Block 16 of Kernohan and Decker's Addition, consisting of Lots 1, 2, 3, and 4 therein, from "Residence B" to "Business B." He requested such rezoning so that he could construct a building thereon and operate a Nash-Finch Company chain store. In that connection, Nash-Finch Company had closed its branch

offices at Hastings and Columbus and moved to Grand Island, where, on the half block involved, known as the 1700 block in Grand Island, Roeser, as shown by his proposed plat and other evidence adduced by plaintiffs, planned to construct a store building about 80 by 120 feet, with adjoining cement parking space on the east and west thereof, large enough to accommodate about 100 cars. His total investment would be about $250,000, and he would employ some 20 to 40 persons.

The building would be located in about the center of the half block facing north on West Second Street, which was a busy, no-parking, arterial street about 48 feet wide, over which passed U. S. Highway No. 30. There would be no driveway into the building or lots on West Second Street, but there would be such a driveway on both Harrison Street from the west and Jackson Street from the east. Those streets are about 36 or 37 feet wide. The rear of the building would abut within about 2 feet of a 16-foot alley on the south, which adjoined "A Residence District" properties. There is a traffic light on the corner of Jackson and West Second streets, a very busy and congested point.

A plat of the area involved, prepared by the city engineer, and one of the entire city as zoned, which was attached to and made a part of ordinance No. 2162, disclosed the following: The south half of Block 16 abutting on West First Street, and the south half of all blocks abutting on West First Street from Clark Street, a block west of Eddy Street on the east, thence west to Clay Street, some 12 blocks, were zoned "Residence A" or "A Residence," as are all other blocks south of West First Street except the east half of a block adjoining Greenwich Avenue on the west. The adjoining north half of the same blocks abutting on West Second Street are zoned "Residence B" or "B Residence." The residence properties owned by plaintiffs are surrounded by residential properties.

Plaintiffs Weber lived at 1710 West First Street, on

Lot 7, Block 16, in "A Residence District," immediately south, across the alley from the half block proposed to be rezoned. In August 1955, they paid $12,500 for their property and have since improved it at an expense of about $2,000.

Plaintiffs Jelinek lived at 1609 West Second Street, across the street from Jackson Street, in the next block east, which is "B Residence District." Their home is an 8-room, tiled-roofed, brick-veneered house, located on an extra-10-foot-wide lot, with a brick wall around the entire lot.

Plaintiffs Meyer lived at 1704 West First Street, on Lot 8, Block 16, in a 9-room house located in "A Residence District" immediately south across the alley from the half block proposed to be rezoned. They paid $18,000 for their home in 1954.

Numerous photographs in the record portray the many residences near and surrounding the half block involved. Some of them are ordinary bungalows or residences, some are more substantial, and many are beautiful and more valuable homes. They illustrate the residential character of the entire neighborhood, as does the fact that there were 23 small children in the one and one-half block adjoining area who generally crossed Jackson Street on their way to and from schools in the neighborhood.

There is a doctor's office located across the street in the 1700 block on West Second Street. It was constructed under ordinance No. 2162 in "B Residence District," which permitted such building. In the 1600 block on West Second Street there is a residence where people live, which is being used by them as an office for a furnace supply company. It was there when the original zoning ordinance No. 2162 was passed in 1947. Two blocks west there is a small motel, rented during the winter months as apartments. Beginning four blocks further west on West Second Street there are several large motels. West from Clay Street in the 2100 block

of West Second Street there are other motels, filling stations, restaurants, and garages. However, there are 26 residential properties on West Second Street in the three blocks immediately west of the property involved. The evidence shows without dispute that there is no parking on West Second Street. The traffic on West Second Street, and congestion thereof on Jackson Street and Harrison Street where parking is permitted, is tremendous and increasing. On West Second Street traffic has increased from 9,000 to 14,000 vehicles daily at the intersection of Jackson and West Second Streets, where it is almost impossible to turn left into Jackson or Harrison Streets.

There is no competent evidence whatever of necessity for the location of such a chain store as planned. The fact is that the neighborhood is well supplied with stores within a reasonable distance from the area involved. Further, its location at the place involved would without dispute greatly increase traffic congestion and reduce the value of plaintiffs' properties and other residential properties located in the area for some distance each way therefrom by from 20 to 30 percent.

In that connection, on November 21, 1956, at a regular meeting of the city council, the request to rezone was presented and referred to the planning commission, as required by section 3 of ordinance No. 3139, and the council agreed to sit as a board of adjustment for hearing the application on December 19, 1956, as it had a right to do. § 19-911, R. R. S. 1943. Notice of the filing of the application and the time and place of hearing thereon was published as shown by the printer's affidavit, but whether or not section 1 of ordinance No. 3139 and section 19-904, R. S. Supp., 1955, were fully complied with by personally serving a written notice upon all owners of real estate located within 300 feet of the property to be rezoned is in dispute. However, in view of our decision, that issue requires no discussion or determination.

Prior to the meeting on December 19, 1956, a large number of interested parties filed five written, signed protests or objections to the proposed rezoning with the city clerk. The exact number of objectors who had a right to do so is not clear, but plaintiffs claim there were as many as 54, as shown by the written protests so filed and received in evidence. Such protests were substantially upon the grounds that: The granting of such application would constitute illegal spot zoning; cause irreparable damage to and depreciate the value of residential properties in that locality; create an extra hazard for pedestrian and automobile traffic at West Second and Jackson Streets; that a chain store was not necessary in that locality; that it would destroy the peace and tranquility of its residents; and that no proper notice was given of the application and hearing thereon.

In that connection, as disclosed by section VI of ordinance No. 2162, " 'B' Business District Regulations" would permit the location and use on the property involved of every type of business and industry except those offensive types specifically excluded. The allowance of the rezoning request and ordinance establishing such action would have valuable "A Residence District" properties joining "B Business District" properties, separated only by an alley to be used for business purposes.

Eight members of the city planning commission, to whom the request for rezoning had been referred, met December 4, 1956, and unanimously voted to disapprove Roeser's request to rezone. On December 10, 1956, a written report of such commission, signed by its chairman, was delivered to the mayor, setting forth the reasons why it had so voted to deny such request. That report said in part: "The City Planning Commission, since its inception five years ago, has consistently and without exception opposed what it terms spot re-zoning. We do not feel that the City Administration ever has the moral right to consider a fundamental change in zoning in an isolated lot or block that would result in that area

being zoned out of harmony with the surrounding area. This does not mean that we oppose the expansion of Business 'B' areas in general. Quite the contrary, we feel that such an expansion is due and called for. However, we feel that good city planning in the realm of zoning restrictions should move from existing Business 'B' areas in an outward manner along commercial type streets. We are unalterably opposed to a hop, skip and jump method of zoning.

"To apply our basic thoughts on re-zoning in general to the West Second Street situation, we feel that the City Administration would be justified in moving eastward from the existing Business 'B' classifications, a reasonable distance so as to permit some expansion of business activity in this area.

"In conclusion, the City Planning Commission feels that the Business 'B' areas of the city should be expanded. The Commission feels that this particular re-zoning request must be considered along with the other blocks on West Second Street immediately to the west of the block in question. After such unit consideration there might be some logic in re-zoning this particular block; however, the Commission feels that there are several blocks to the west of this property that should be re-zoned Business 'B' and actually utilized before the re-zoning of this property should be considered."

In that connection, it is interesting to note that the chairman then serving was not reappointed to the planning commission when his term expired in January 1957, and that a previous request to so rezone a lot lying east across Jackson Street from the property involved had been denied by the preceding city administration as spot rezoning, in conformity with the consistent and agreed policy of the planning commission and that administration for the previous 5 years.

This new city administration had appointed a seven-member "Zoning Commission" on August 15, 1956, as authorized by section 19-906, R. R. S. 1943. Evidently

after hearing of the unfavorable action of the planning commission, the city council referred the request of Roeser for rezoning to its zoning commission. That commission thereupon called a special meeting on December 10, 1956, and without any public hearing or notice, considered Roeser's request for rezoning, and on December 13, 1956, reported in writing to the mayor and city council. Insofar as important here, that report said: "Re: Rezoning of 1700 block West Second Street * * * 1. The zoning commission is basically opposed to any form of spot zoning made without regard to city-wide or future zoning plans for the city.

"2. The zoning commission has now been at work for over three months and has devoted considerable time and made an extensive study of the present zoning classifications existing on Second Street and has reached the conclusion that the area west of Jackson Street on Second Street should be re-classified from 'Residence A' to 'Business B.' In view of that conclusion, the requested change in classification of the 1700 block on West Second Street to 'Business B' appears to be within the scope of the over-all plan of the zoning commission for rezoning in the City of Grand Island, * * *." In that connection, it will be noted that the zoning commission did not know, or overlooked, the undisputed fact that the half block areas for several blocks west of Jackson Street abutting on both the north and south sides of West Second Street were classified by ordinance No. 2162 as "B Residence District" and not "A Residence District."

Thereafter, the city council met again on December 19, 1956, as a board of adjustment and, as authorized in section 19-910, R. R. S. 1943, Roeser's request for rezoning was presented, whereat the hearing thereon was continued until January 9, 1957. At that time, a report, dated January 7, 1957, and signed by four members of the city council serving as a "Zoning Committee," appointed by the mayor, was read to and considered by the

city council as a board of adjustment. Such report was also made without any public hearing or notice thereof. It recited that such committee had "deliberated and considered the request" for rezoning. It found "that the Zoning Commission has under consideration the entire area along West Second Street for rezoning and that there will be public hearings by the Zoning Commission on this area and other areas in the City," and "that the North Half of Block 16 should be rezoned to Business B in as much as it is in the contemplation of an overall area now being considered for rezoning to Business B on Second Street as the area is no longer suitable for residences, and in fact, a number of businesses are being operated in the area." The report should also have added that such businesses were either operated in conformity with "B Residence District" classification under ordinance No. 2162, or had been located there with vested rights before that ordinance was passed in 1947. Be that as it may, the report was unanimously approved by all eight members of the board of adjustment, including the four members of the city council who made the report, and they then unanimously granted Roeser's request for rezoning and ordered an ordinance drawn to make it effective.

Thereafter, on January 16, 1957, the city council passed ordinance No. 3263, which provided that the "north one-half (N½) of Block Sixteen (16) Kernohan and Decker's Addition to said City now zoned and classified as a Residence 'B' District be and the same is hereby rezoned and reclassified and changed to Business 'B' district." Such ordinance was published on January 22, 1957, and on January 23, 1957, plaintiffs filed their petition in the district court for Hall County in conformity with the provisions of section 19-912, R. R. S. 1943.

It should be noted that there is no competent evidence from which it could be concluded that the action of the board of adjustment permitted the rezoning, or

that ordinance No. 3263 was passed for the purpose of promoting the health, safety, morals, or general welfare of the community, in compliance with section 19-901, R. R. S. 1943. The evidence is conclusive that such action and ordinance did not do so.

Section 19-905, R. R. S. 1943, provides in part: "Such regulations, restrictions, and boundaries may from time to time be amended, supplemented, changed, modified or repealed."

Also, section 19-904, R. S. Supp., 1955, provides in part: "The legislative body of such municipality shall provide for the manner in which such regulations and restrictions, and the boundaries of such districts, shall be determined, established, and enforced, and from time to time amended, supplemented, or changed," after notice of and public hearing.

However, as provided by section 19-903, R. R. S. 1943: "Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the over-crowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

In that connection, the city council has never attempted to establish, and has not established a comprehensive plan for rezoning the area west of Jackson Street or any other area on West Second Street designed to meet the specified objectives of section 19-903, R. R. S. 1943. As a matter of fact, the planning commission, zoning commission, and zoning committee

all considered that such plan should be adopted, but they never did anything to properly and legally accomplish it. The city council did no more than learn that such a plan was being considered and might be proposed in the future, but it never took any official action seeking to rezone such area in accord with a comprehensive plan designed to conform to the specified objectives heretofore recited. The evidence clearly established that the city council as a board of adjustment, and the city council as such, both acted contrary to the advice of its planning commission and in violation of the enabling statutes and authorities heretofore cited, by spot zoning the property involved in an arbitrary, unreasonable, discriminatory, and illegal manner for the benefit of Roeser, to the detriment of plaintiffs, the area involved, and other owners of property therein. The action of the board of adjustment in permitting the rezoning, and ordinance No. 3263 enacted by the city council to enforce it, were both invalid.

We conclude that the judgment of the trial court was clearly wrong. It should be and hereby is reversed and the cause is remanded with directions to render a judgment in favor of plaintiffs and against defendants, thereby awarding plaintiffs the relief prayed for in their petition. All costs are taxed to defendants.

REVERSED AND REMANDED WITH DIRECTIONS.