FREDERICK H. BUCHOLZ ET AL., APPELLEES, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, ET AL., APPELLANTS.

120 N. W. 2d 270

Filed March 1, 1963. No. 35311.

Herbert M. Fitle, Fraser, Wenstrand, Stryker, Marshall & Veach, Wear, Boland, Mullin & Walsh, Webb, Kelley, Green & Byam, and Abrahams, Kaslow, Story & Cassman, for appellants.

Bernard J. Boyle, John W. Delehant, Jr., and Joseph T. Votava, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This action was brought to declare two zoning ordinances of the city of Omaha, Nebraska, void. The district court declared the ordinances to be void and enjoined the defendants from exercising any rights under them. The defendants' motion for new trial was overruled and they have appealed to this court.

The assignments of error are that the judgment of the

864

district court is not sustained by the evidence and is contrary to the evidence and the law. It is the duty of this court to try the issues of fact complained of de novo and reach an independent conclusion without reference to the findings of the district court. § 25-1925, R. R. S. 1943; Toelle v. Preuss, 172 Neb. 239, 109 N. W. 2d 293.

The land involved in this action is located north of Dodge Street Road and east of One Hundred Second Street in Douglas County, Nebraska. It is within 3 miles of the corporate limits of the city of Omaha and is subject to the zoning ordinances enacted by the city council of the city of Omaha.

The defendants are the city of Omaha and certain of its officers; Leo M. Waxenburg, trustee; John A. Wiebe; and Westroads, Inc. Waxenburg is the owner of a 103-acre tract of land bounded on the west by One Hundred Second Street and on the south by Dodge Street Road. Wiebe obtained an option to purchase the Waxenburg land and assigned the option to Westroads, Inc. Westroads, Inc., is a corporation organized by Wiebe for the purpose of developing a large regional shopping center upon the Waxenburg land.

The plaintiffs own an 80-acre tract of land which lies north of and adjacent to the Waxenburg land. In 1954, an area which included the Waxenburg land and the plaintiffs' land was rezoned from Second Suburban District to Second Residence District. A Second Residence District is a low-density residential zone.

In 1959, Wiebe and Westroads, Inc., filed an application to rezone a part of the Waxenburg land. The application was referred to the planning board which recommended that it be denied. The city council, after holding a public hearing upon the application, referred it to the planning board for further study. The planning board again recommended that the application be denied. After a second public hearing the city council adopted a motion which stated that the city council did not concur in the recommendation of the planning board and di-

rected that rezoning ordinances and protective covenants be prepared. Thereafter, the city council enacted ordinances rezoning a part of the Waxenburg tract and approved a protective covenant agreement submitted to it.

Ordinance No. 21464 rezones an irregular tract of approximately 11.2 acres near the center of the Waxenburg land from Second Residence District to First Commercial District. Ordinance No. 21463 rezones a 47.3-acre tract surrounding the 11.2-acre tract from Second Residence District to Parking Lot District. The rest of the Waxenburg land, amounting to approximately 44.5 acres, remains Second Residence District.

The issue in this case is whether the rezoning of a part of the Waxenburg land was illegal and therefore void. That issue must be determined by the application of the following rules.

The city of Omaha under its home rule charter has the power, by ordinance, to zone the city in the interest of public health, safety, morals, and the general welfare. Any such act of the city must, however, not be unreasonable, discriminatory, or arbitrary and it must bear some relationship to the purpose or purposes sought to be accomplished by the ordinance. City of Omaha v. Cutchall, 173 Neb. 452, 114 N. W. 2d 6.

The validity of a zoning ordinance must be determined by an examination of the facts presented in the particular case. City of Omaha v. Glissmann, 151 Neb. 895, 39 N. W. 2d 828. Whether a zoning ordinance is arbitrary and unreasonable, or illegal, must be determined by the evidence of the special surrounding conditions and circumstances. The burden is on one who attacks the validity of a zoning ordinance, valid on its face and enacted under lawful authority, to prove facts which establish its invalidity. Weber v. City of Grand Island, 165 Neb. 827, 87 N. W. 2d 575.

The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the

contrary.  Davis v. City of Omaha, 153 Neb. 460, 45 N. W. 2d 172.

The evidence in this case consists of 993 pages of testimony and 82 exhibits.  We will not attempt to summarize the entire record but will limit our discussion to those facts which we believe to be controlling.

The Waxenburg land, and the property adjacent to it, is largely undeveloped.  Its use is predominantly agricultural.  A part of the plaintiffs' land has been platted for residential purposes and three expensive homes have been constructed upon it.  Two similar homes have been constructed on the property north of the plaintiffs' land, two on the property west of Ninety-sixth Street and east of the Waxenburg land, and two on that property southeast of the Waxenburg land.  The area directly south and directly west of the Waxenburg land is undeveloped.

The city is empowered to divide the area into districts and regulate the use of buildings and land within the districts.  § 14-402, R. R. S. 1943.  "Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements, and to promote convenience of access.  Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."  § 14-403, R. R. S. 1943.

The plaintiffs make a number of contentions based upon the requirements of section 14-403, R. R. S. 1943.  One of the principal contentions of the plaintiffs is that

the rezoning of the Waxenburg land is illegal because it will not "lessen congestion in the streets" but will result in an increase in the traffic load on Dodge Street Road. Dodge Street Road is a heavily traveled 4-lane highway. Interstate Highway No. 280 intersects Dodge Street Road at a point approximately 1,200 feet west of One Hundred Second Street. At that point (One Hundred Fifth Street) an interchange is being constructed. There can be no doubt but that the construction of a large regional shopping center on the Waxenburg land will result in a substantial increase in the traffic load on Dodge Street Road. However, that does not establish that the zoning is illegal. The construction of a large regional shopping center in any location would increase the traffic on the streets and highways leading to it. The real question is whether the Waxenburg land is an appropriate location for such a development.

The planning board did not oppose the construction of a large shopping center on Dodge Street Road near the interstate highway interchange. The planning board took the position that the area east of the interstate highway should remain zoned residential and that the area west of the interstate highway should be zoned commercial. There is no commercial development along Dodge Street Road between Ninetieth Street and the interstate highway at this time except that a tract between Ninetieth and Ninety-third Streets has been rezoned to Residence District 9 to permit the construction of an office building.

There has been some commercial development along Dodge Street Road west of One Hundred Eighth Street and the Big Papillion Creek Drainage Ditch. It is questionable whether the shopping center which has been proposed could be developed on the land west of the interstate highway. That, however, is not an issue in this case.

The important fact here is that the planning board did not consider the traffic load on Dodge Street Road

near the interstate highway such that the property in that area could not be zoned commercial. There is evidence that the planning department at one time considered commercial development for all four quadrants of the interchange. A memorandum from the planning director dated February 10, 1959, and addressed to the director of public works stated as follows: "The land use studies of the City Planning Department indicate the four quadrants of this interchange will be developed as soon as the highway is opened for a large 100 acre shopping center, a large insurance office site, and two large steak house-motel sites. * * * The potential traffic generated may run as high as 5200 cars per day to the shopping center along (alone) which certainly indicates need for adequate circulation in the area."

Burt Whedon, the city traffic engineer, testified that he could not think of a better place to locate a regional shopping center in Omaha than at the northeast quadrant of the Dodge Street Road interchange.

John I. Cofer, a planning consultant of considerable experience, testified that in his opinion the most appropriate use of the land near the northeast quadrant of the Dodge Street Road interchange would be for the development of a large regional shopping center. This witness emphasized that because of the accessibility of this land, the welfare of the community as a whole required that the land be used for a purpose which would tend to concentrate a large number of people at that location or provide a convenience to a wide area of the city.

The most that can be said of the evidence presented by the plaintiffs on this issue is that it established that there is a difference of opinion as to whether the Waxenburg land is an appropriate location for the development of a large regional shopping center. Where the validity of the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be al-

lowed to control. Pettis v. Alpha Alpha Chapter of Phi Beta Pi, 115 Neb. 525, 213 N. W. 835.

The plaintiffs contend that the rezoning is illegal because it does not conserve the value of their buildings. If it is assumed that the value of the homes constructed upon the plaintiffs' land is depreciated by the rezoning, that alone does not establish that the rezoning is illegal. The exercise of the power to zone may not be denied on the ground that individual property rights may be adversely affected thereby. Davis v. City of Omaha, *supra*. The plaintiffs have no right to insist that under no circumstances should the zoning of the land adjacent to their land be changed. The power to zone includes the power to rezone under proper circumstances. One of the plaintiffs admitted, upon cross-examination, that there have been many changes in the character of the land in that area within the last 4 or 5 years. The rights of the owners of the adjacent land and the public welfare must receive consideration.

The plaintiffs contend that the rezoning is illegal because the Waxenburg land is of a residential character, that it has a peculiar suitability for residential use, and that the most appropriate use of it would be for residential purposes. The evidence presented by the plaintiffs tends to establish this contention but there is ample evidence to the contrary. At most, the evidence establishes that the classification is debatable. In this connection we note that the judgment of the trial court stated: "We do not hold that no commercial development shall be permitted on any part of the Waxenburg tract." The trial court held only that a development of the scope and nature proposed was illegal.

What is the public good as it relates to zoning ordinances affecting the use of property is primarily a matter lying within the discretion and determination of the municipal body to which the power and function of zoning is committed; and unless an abuse of discretion has been clearly shown, it is not the province of the court

to interfere. Dundee Realty Co. v. City of Omaha, 144 Neb. 448, 13 N. W. 2d 634.

The contention of the plaintiffs that the rezoning is illegal because it is not in accordance with a comprehensive plan and is invalid "spot zoning" is not supported by the evidence. Spot zoning is a descriptive term rather than a legal term. Spot zoning as such is not necessarily invalid, and its validity depends upon the facts and circumstances appearing in the case. Weber v. City of Grand Island, *supra.* Spot zoning generally refers to the singling out of a small parcel of land for a use or uses classified differently from the surrounding area, primarily for the benefit of the owner of the property so zoned and to the detriment of the area and other owners therein. The fact that property zoned residential is near property zoned industrial does not make the zoning illegal, and the validity of spot zoning depends upon more than the size of the spot. Graham v. Graybar Electric Co., 158 Neb. 527, 63 N. W. 2d 774. The fact that only one tract of land or one owner is involved in a zoning change does not make the rezoning invalid spot zoning. Partain v. City of Brooklyn (Ohio), 138 N. E. 2d 180.

The fact that the area involved in this action is largely undeveloped is important. This is not a case where the applicants propose to construct a large apartment house or super market in a fully developed residential area as in Davis v. City of Omaha, *supra,* and Weber v. City of Grand Island, *supra.* The applicants in this case propose a plan for the development of a 103-acre tract of undeveloped land. The plan contemplates an 11.2-acre commercial district surrounded by a 47.3-acre parking lot district. The remaining 44.5 acres along the north and east sides of the tract are to be developed as a Second Residence District.

In reality, the plan proposed by the applicants is a comprehensive plan for the development of a rather large tract of undeveloped land. Under the circum-

stances of this case it was within the power of the city council to rezone a part of the Waxenburg land so that it could be developed as a shopping center.

The question that remains for consideration is the effect of the protective covenant agreement upon the validity of the rezoning action.

In support of the application for rezoning, the applicants presented their plan for the development of a shopping center on the Waxenburg land. The plan contemplates the construction of a building in the center of a large parking area. The land along the north and east sides of the parking area is to be developed as a second residence district. The applicants also propose to construct a grade-separation access facility for traffic entering the shopping center from Dodge Street Road which will eliminate left turns by traffic entering or leaving the shopping center.

While the application for rezoning was pending before the city council, the council obtained a report and recommendation from John I. Cofer, a planning consultant, concerning the proposed rezoning. Cofer's report was favorable to the rezoning if it would result in the development of a unified, integrated shopping center with proper provision for the relationship of the shopping center to its surroundings and the construction of suitable access facilities.

. The motion adopted by the city council on July 5, 1960, which recited that the council did not concur in the recommendation of the planning board and which directed that rezoning ordinances be prepared, also directed that covenants be prepared for approval by the city council as follows: "(a) That a proper buffer zone be established of not less than 300 ft. between the shopping and parking area, and the abutting residential property. * * * (b) That adequate and reasonable traffic control, including the proper access roads, be established at no cost to the City of Omaha. * * * (c) That the City of Omaha retain control of its development in a covenant,

such that the development as outlined, be constructed."

The rezoning ordinances which were adopted by the city council at its meeting on October 4, 1960, do not refer to the protective covenant agreement in any way. At the same meeting and after the ordinances had been adopted, the council approved the protective covenant agreement dated October 3, 1960, which had been executed by the applicants and Waxenburg. The agreement expressly provides that it is not conditioned upon a rezoning of the Waxenburg land. However, for the purpose of this opinion, we assume that the protective covenant agreement was an inducement to the adoption of the rezoning ordinances.

The protective covenant agreement is between Waxenburg as first party and Wiebe and Westroads, Inc., as second parties. The agreement provides that the covenants shall run with the land and shall be for the use and benefit of Waxenburg, the city of Omaha, and the owners of the land which is adjacent to the Waxenburg land. The covenants are to remain in force for a period of 10 years after the shopping center is open for business.

The agreement recites that the second parties have represented to Waxenburg, the city of Omaha, and the owners of adjacent land that rezoning of a part of the Waxenburg land has been requested for the purpose of developing a regional shopping center upon the Waxenburg land; that second parties will provide a grade-separated access to the shopping center from Dodge Street Road without cost to the city of Omaha; and that a part of the Waxenburg land will remain Second Residence District to constitute a buffer zone of at least 300 feet along the north and east sides of the area to be rezoned. The agreement also recites that the city council directed that covenants be submitted to the city to insure that the representations of the second parties would be fulfilled.

The agreement provides that construction shall commence within 5 years; that construction in the area

zoned First Commercial District shall be limited to an integrated regional shopping center; that construction in the area zoned Parking Lot District shall be limited to parking areas, planting areas, landscaped areas, and sidewalks; that the 44.5 acres not rezoned shall be subdivided and platted into residence lots and streets; that vacant areas not in the process of construction shall be landscaped and maintained neatly; and that the shopping center may not be opened for business unless and until a traffic grade-separated access has been constructed without cost to the city of Omaha. The agreement further provides that in the event of a breach of the covenants applicable to the land rezoned, or in the event the Waxenburg land is not conveyed to the second parties, the city of Omaha may again rezone the rezoned area to Second Residence District.

A city has no right or power to enter into contracts which curtail or prohibit an exercise of its legislative or administrative authority. City of Nebraska City v. Nebraska City Speed & Fair Assn., 107 Neb. 576, 186 N. W. 374. The plaintiffs contend that the protective covenant agreement in this case invalidates the rezoning ordinances because the action of the city council was the result of a bargain or agreement between the applicants and the city.

The evidence in this case does not show a bargain or agreement between the applicants and the city. There is evidence that the applicants made certain representations to the city council and other officials in an effort to secure the rezoning of a part of the Waxenburg land. Rezoning applications are usually supported by similar representations concerning the proposed use of the land in question and, in many cases, may be an inducement for the action taken by the zoning authorities. No one contends that an applicant for rezoning should not disclose the proposed use to be made of the land involved. The contention is that the applicants should not be

allowed to give some assurance that the proposed plans will be carried out.

The applicants in this case have merely agreed to do the things which they have represented that they intend to do. The effect of the protective covenant agreement is to give some further assurance to the city and the adjoining landowners that the representations of the applicants were made in good faith.

The effect of the protective covenant agreement is to give the city council greater control over the development of the property which was rezoned. To a limited extent, the use of the parking lot district classification and the fact that 44.5 acres of the Waxenburg land was not rezoned, accomplished the same result as the protective covenant agreement.

The protective covenant agreement appears to be for the benefit of the owners of the adjoining land and the city. It is difficult to see how the plaintiffs are prejudiced in any way by the agreement since everything that is to be done under the agreement could be done without such an agreement. In the event of a breach of the covenants, the agreement provides that the property may be rezoned. This result could be accomplished in the absence of any agreement.

The question of the effect of such agreements has been considered by the courts in other states. Some courts have held that such agreements invalidate rezoning action, but some of the recent decisions are to the contrary. The plaintiffs cite cases from New Jersey, Maryland, and Florida in which rezoning has been held invalid where such agreements were involved. See, Houston Petroleum Co. v. Automotive Products Credit Assn., Inc. (1952), 9 N. J. 122, 87 A. 2d 319; Baylis v. City of Baltimore (1959), 219 Md. 164, 148 A. 2d 429; Hartnett v. Austin (1956), (Fla.), 93 So. 2d 86. The defendants cite cases from New York, Massachusetts, and Maryland where rezoning has been held valid even though protective covenant agreements were involved.

See, Church v. Town of Islip (1960), 8 N. Y. 2d 254, 168 N. E. 2d 680; Sylvania Electric Products, Inc. v. City of Newton (1962), — Mass. —, 183 N. E. 2d 118; Pressman v. City of Baltimore (1960), 222 Md. 330, 160 A. 2d 379. See, also, Town of Somerset v. County Council for Montgomery County (1962), 229 Md. 42, 181 A. 2d 671; Pecora v. Zoning Commission of Town of Trumbull (1958), 145 Conn. 435, 144 A. 2d 48; Johnson v. Griffiths (1955), (Ohio App.), 141 N. E. 2d 774.

We conclude that under the facts and circumstances in this case the protective covenant agreement executed by the applicants did not invalidate the action of the city council which rezoned a part of the Waxenburg land.

The judgment of the district court is reversed and the cause remanded with directions to dismiss the action.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.