[No. 4140. Decided March 21, 1902.]

OLYMPIAN-TRIBUNE PUBLISHING COMPANY, *Appellant,* v. JOHN BYRNE *et al., County Commissioners of Thurston County, Respondents.*

COUNTY COMMISSIONERS — RECORDS — CORRECTION.

A board of county commissioners has power to amend its records, even after adjournment, so as to make them show the true orders made by the board.

SAME — CONTRACTS — BID FOR PUBLIC PRINTING — CONDITIONAL ACCEPTANCE.

The acceptance by a board of county commissioners of a bid for printing, on certain conditions, which the bidder refused to agree to would not constitute a contract which the bidder could enforce.

SAME — INTERVENING RIGHTS.

The fact that the entry of an order on the records of the county commissioners accepting a bid for printing unconditionally was corrected about one month subsequently, by making the records show that a condition had been ordered attached to the acceptance, would not give the bidder any intervening rights between the original entry and date of correction, where nothing had been done under the proposed contract, which in fact could not have been operative until some three weeks subsequent to the date of the correction, and there is nothing to show that the

bidder relied upon the unconditional acceptance shown by the. record to his disadvantage.

SAME — DELINQUENT TAX LIST — PUBLICATION IN OFFICIAL NEWS-
    PAPER — POWERS OF COUNTY TREASURER.

Laws 1901, p. 385, § 3, which provides that the county treas-
urer shall make publication of summons in delinquent tax cases
"in the official newspaper of the county,"' provided the charge
therefor does not exceed ten cents for each description, and that,
if such publication cannot be made in said newspaper at said
price, the county treasurer may cause such publication to be
made in any other newspaper of general circulation published in
the county, at a cost not to exceed said price, does not con-
template that the county treasurer shall contract for the publica-
tion of the delinquent tax list, except upon the failure to publish
such list by the official newspaper of the county selected by the
commissioners, and it is within the power of the commissioners
to include such tax list in the contract let by them for public
printing.

Appeal from Superior Court, Thurston County.—
Hon. MASON IRWIN, Judge. Affirmed.

*Troy & Falknor*, for appellant.

*George H. Funk* and *J. W. Robinson*, for respondent.

The opinion of the court was delivered by

MOUNT, J.—The county auditor of Thurston county,
under the provisions of § 371, Bal. Code, published a notice
that the board of county commissioners would, on May 7,
1901, "receive sealed proposals for the public printing of
Thurston county, for the term of one year." The appellant
and others submitted bids therefor. Appellant's bid was as
follows:

"Olympia, Washington, April 17, 1901.
To the Honorable Board of County Commissioners,
    Thurston County, Olympia, State of Washington.
Gentlemen:
    The undersigned hereby bids and proposes to do the pub-
lic printing of Thurston county, in the Weekly Olympian,

in contemplation of the attached notice to publishers during the ensuing year beginning July 1, 1901, at the price of one-fourth of one cent per square of 250 ems nonpareil for the first insertion, and for one-eighth of one cent per square for each subsequent insertion.   The circulation of the Weekly Olympian   during the year   averages   seven hundred and fifty copies.

Respectfully submitted.

OLYMPIAN-TRIBUNE PUBLISHING COMPANY,

By S. A. MADGE, President, etc."

On May 7, 1901, the board of county commissioners accepted the above named bid upon condition that the delinquent tax list should be included therein at the same rate, and the clerk of the board entered the following in the minutes of the journal of proceedings: "Contract was awarded to the   Olympian-Tribune   Publishing   Company." Three days later, viz., on May 10, 1901, the board caused the following order to be entered on the minutes:

"The county attorney is directed to prepare a contract with the Olympian-Tribune Publishing Company for the county printing for the year beginning July 1, 1901, in accordance with their bid.   Said contract to specifically include all county printing, including publication of delinquent tax foreclosure list.   Bond fixed in the sum of $5,000."

The board on the same day adjourned its session to June 4, 1901.  The minutes of the meetings of the board for May 7, 8, 9 and 10 were published by the clerk prior to the next session. The board reconvened on June 4, 1901, and on the 6th, upon the reading of the minutes for approval, the board, being of the opinion that the minutes with reference to the contract for the public printing as entered by the clerk on May 7th, did not express the true action of the board, caused to be inserted in the minutes of May 7th the following:   "On condition that the delinquent tax list be

included at price stated in the bid;" so that the order read: "Contract was awarded to the Olympian-Tribune Publishing Company on condition that the delinquent tax list be included at the price stated in the bid." The appellant was at all times ready to enter into a contract according to the terms of the notice and the proposal, but refused to enter into a contract which included more than was provided in the notice for bids, or to specifically include in the contract the publishing of the delinquent tax list, claiming that the delinquent tax list was not a part of the public printing; whereupon respondents, on June 19, 1901, caused the following order to be entered upon the records:

"In the matter of the county printing it was moved by Commissioner Ismay, and carried, that the vote by which the bid of the Olympian-Tribune Publishing Company was accepted on May 7, 1901, be reconsidered and rescinded, and it was then ordered that all bids be rejected and that new bids be called for.

The object of this action is to establish appellant's right to the contract for the county printing, so that its publication shall be known as the official newspaper for the year ending July 1, 1902. On appeal to the superior court from the board of county commissioners, the commissioners were affirmed. This appeal is from the order of the superior court affirming the action of the board of county commissioners.

Numerous errors of the lower court are alleged, but it will be sufficient for the purposes of this case to discuss but two, viz: (1) Had the county commissioners authority after adjournment to correct the minutes entered by the clerk, so as to make them speak the truth? (2) Did the conditional acceptance of appellant's bid constitute a binding contract, notwithstanding the refusal by appellant to

agree to the condition? Section 356, Bal. Code, provides that the board of county commissioners shall cause to be recorded in a book to be kept for that purpose all their proceedings, and that this record shall be kept by the clerk and shall be open for inspection. Section 335, Bal. Code, provides that the county auditor shall be clerk of the board, attend their meetings, and keep the record. The clerk is simply a ministerial officer, with power to record the truth. If he should fail to record the proceedings correctly, no good reason exists, or can be advanced, why this record may not be corrected. The rule is stated in 7 Am. & Eng. Enc. Law (2d ed.), at page 986, as follows:

"A board of county commissioners has the same power as any court to amend its records according to the truth, and upon such evidence as the board, in its discretion, may deem sufficient;" and the authorities cited bear out the rule announced. See *Commissioners v. Hearne,* 59 Ala. 371; *Lapan v. County Commissioners,* 65 Me. 160; *Levant v. County Commissioners,* 67 Me. 429; *Gloucester v. County Commissioners,* 116 Mass. 579; *State v. Central Pacific R. R. Co.,* 17 Nev. 259 (30 Pac. 887); 1 Dillon, Municipal Corporations (4th ed.), § 297.

This court, in *Burrows v. Kinsley,* 27 Wash. 694 (68 Pac. 332), held that it was competent to introduce oral evidence for the purpose of ascertaining if any order of the board of county commissioners was in fact made which was not noted upon the records. It seems, if oral evidence may be received to prove an order which the board of county commissioners has in fact made, but which does not appear upon the records, it must necessarily follow that the county commissioners may make the records show the order.

Appellant asserts that rights had intervened between the entry of the order as first made by the clerk and the time

of the correction.    Appellant certainly had no rights which intervened.    The status of appellant is the same now that it was at the time the board accepted the bid.    It is true appellant may not have known the fact that a condition was attached to the acceptance of its bid, and may have been led to believe the bid was accepted unconditionally; but there is nothing to show that it relied upon the record to its disadvantage.    On the other hand, the term of its contract did not begin for nearly a month after the records were corrected.    It was thoroughly understood that a written contract was to be prepared and signed by the parties; so that if appellant had acted upon the first record to its disadvantage, no such rights intervened as would preclude the commissioners from making their records speak the truth, even if such right may be precluded at all.    If the contract in question was awarded appellant upon condition that the delinquent tax list be included at the price stated in the bid, and this condition was not accepted by appellant, which seems to be admitted, this appeal must fail, because the contracting parties have not agreed, and neither can enforce any rights thereunder as against the other.    It cannot be claimed that the respondents could require the appellant to publish the tax list at the price named in the bid, because appellant expressly refused to enter into such contract.    Appellant contends that the delinquent tax list is not included in the "public printing," as that term is used in the notice for proposals, and that therefore the commissioners have no right to include it in the contract.    No doubt if the county commissioners are prohibited from including this item in the contract, or have no jurisdiction over it, this contention would have much force.    To support this position counsel rely upon the case of *State ex rel. Whatcom Coun-*

*ty v. Purdy,* 14 Wash. 343 (44 Pac. 857), where it was held that § 96 of the Laws of 1893, p. 366, conferred special authority upon the county treasurer to select the newspaper and make a contract therewith for publishing the delinquent tax list, independent of the county commissioners and of the official newspaper. The laws of 1893, referred to in that decision, have been entirely superseded by the act of 1897, p. 136; so that by the amendment of 1901, p. 383, it is provided as follows:

"The publication of the summons or notice required by this section shall be made by the county treasurer in the official newspaper of the county: Provided, The price charged by any such newspaper for such publication for the whole number of issues shall not exceed in any case the sum of ten cents for each description contained in said notice; and that, if such publication can not be made in said newspaper at said price, the county treasurer may cause such publication to be made in any other newspaper printed, published and of general circulation in the county, as a cost not to exceed said price."

This provision does not undertake to authorize the county treasurer to enter into a contract for the publication of the notice independently of the board of county commissioners, as the provision under consideration in *State ex rel. Whatcom County v. Purdy* did. It recognizes the right of the board of county commissioners to select the "official newspaper," and requires the county treasurer to publish the notice therein, "provided the price charged by such newspaper shall not exceed the sum of ten cents for each description." The "price charged" means, of course, the contract price agreed upon. If that price should be more than ten cents per description, and the official paper should refuse to publish the notice at the maximum rate, or, in the language of the provision, "If such publication cannot be made in said newspaper at said price," in that event,

and in that event only, the county treasurer has authority to publish the notice elsewhere. If the "price charged" by the official publication should be less than ten cents for each description, then the county treasurer has no discretion in the matter; he must publish the notice in the official newspaper. This is evidently the express meaning and intent of the law. It harmonizes the whole, and does not take away the power of the board of county commissioners to contract with reference to this item. The same rules apply to a municipal corporation, a party to a contract, as to any individual. An individual may certainly include any item which he desires in his contract, and may construe the terms thereof by the contract itself, so as to prevent future litigation upon any particular item, especially when he contends that the item is one for which the contract is made. The board of county commissioners, as managers of the business of the county, had a right to award the contract subject to the conditions named. The condition was certainly reasonable, and no doubt would have saved the county much expense and litigation over a proper construction of the contract, and was for this very purpose. Since this condition was not accepted, no contract was made and none exists.

The judgment is affirmed.

REAVIS, C. J., and HADLEY, DUNBAR, WHITE and ANDERS, JJ., concur.

FULLERTON, J., concurs in the result.