The action was brought by the plaintiffs, citizens and taxpayers of Johnston County to annul a contract made between the defendants on 8 February, 1927, to restrain the defendants from carrying the contract into effect, and to require the board of commissioners to turn over to the State Sinking Fund Commission, under the provisions of chapter 95, Public Laws 1927, certain funds allocated to Johnston County by the State Highway Commission.
From the evidence introduced by the parties Judge Harris found the facts to be as follows:
1. That on 8 February, 1927, the board of county commissioners of Johnston County were the duly authorized and constituted authorities, having charge of the public roads and the building and maintenance thereof in Johnston County, and the power to make contracts relative thereto.
2. That the State Highway Commission were on 8 February, 1927, the duly authorized authorities, having charge of the State highways of the State of North Carolina, and the power to construct and maintain the same, and to make contracts relative thereto. *Page 382 
3. That the minutes of the board of county commissioners of Johnston County of 8 February, 1927, and those supplemental thereto, the same being the minutes of 16 February, 1927, and 21 April, together with the supplemental contract executed on 8 February, 1927, by C. A. Fitzgerald, chairman of the board of county commissioners of Johnston County and attested by Neil Barnes, clerk to the said board, constitute the supplemental contract and extension of time of repayment of the funds in the sum of $500,000 theretofore loaned to the State Highway Commission by the county of Johnston for the construction of State highways in Johnston County, and the court finds as a fact that the existing contract between the county of Johnston and the North Carolina State Highway Commission was duly made and entered into and the same became a binding and legal contract on 8 February, 1927; and the court further finds that the minutes of 15 February, 1927, and 21 April, 1927, were made nunc pro tunc to correct the minutes of 8 February, and that all of the said minutes relate back and become a part of the minutes of 8 February, 1927.
4. The court further finds that the supplemental contract of 8 February, 1927, is supplemental to and in extension and renewal of the contract of 14 April, 1925.
5. The court further finds that the State Highway Commission, through their counsel, have proposed to provide the funds for the payment of the $130,000 short-term note executed by the county of Johnston to procure funds for making the original loan to the North Carolina State Highway Commission; that this part of said loan will be due by the State to the county on maturity of said note.
It was thereupon adjudged that the prayer of the plaintiffs be denied; that the restraining order be dissolved, and that the contract made on 8 February, 1927, between the county of Johnston and the State Highway Commission be declared legal and valid. It was further adjudged by consent of parties that the Highway Commission should reserve out of the first money in its possession applicable to the discharge of the contract of 14 April, 1925, the sum of $130,000 and pay the same to the State Sinking Fund Commission in trust for the payment of the note of Johnston County for this sum, which is to mature 6 October, 1927. The plaintiffs excepted and appealed.
The exceptions first to be considered are those which denounce the binding force of the contract made by the defendants on *Page 383 
8 February, 1927. Contracts of this character were authorized by the Act of 1921 (Laws 1921, ch. 2, sec. 14), but forbidden by the act of 1927. Public Laws 1927, ch. 95, sec. 12. The plaintiffs contend that the purported contract was made, not on 8 February, 1927, but some time after 4 March when the Act of 1927 went into effect, and as a basis of their contention they set for these propositions: (1) That on 8 February no record of the contract was entered in the proceedings of the board of commissioners; (2) that the contract was made, if at all, in Wake County; (3) that the minutes of the board of commissioners were amended after the institution of the present action. The defendants not only deny that the contract was made outside Johnston County; they assert that it was duly considered and authorized by the board of commissioners in a meeting regularly held in the courthouse at Smithfield on 8 February, and that on 16 February in a meeting of the commissioners regularly called for the purpose it was ratified, affirmed and ordered to be spread upon the minutes.
Among the facts found in reference to these contentions and made a part of the judgment are the following: The minutes of 8 February, 16 February, and 21 April, together with the agreement executed by the chairman of the board and attested by the clerk, constitute the supplemental contract between the defendants; the minutes of 16 February and 21 April were madenunc pro tunc to correct the minutes of 8 February; they relate back and are a part of the minutes entered of record at that time. It was found to be a fact that the minutes which were more fully set out after the institution of this action were "true minutes of what occurred on 8 February, 1927." The facts thus found are amply supported by the record. Indeed, the evidence to the contrary is very slight. So we are confronted with the question whether the defective or inaccurate minutes of 8 February could be made "to speak the truth" as to what actually took place.
On this point the law has been declared. In Mayo v. Whitson, 47 N.C. 231,Nash, C.J., expressed the opinion of the Court in these words: "It is further urged that the Court will not allow an amendment of a record to the injury of third persons who have acquired an interest under it. The principle is misapplied here. The Court is not called on to amend any process whatever, but to amend its own records, so as to make them show the truth. The record so amended can work no greater injury to any one than would arise if the order had been committed to the records at the time it was made, for it must speak as of that time. The question we are now considering is one of great importance to every man. Every citizen is interested in the principle that the records of these courts of justice should import absolute verity. *Page 384 
The security of property and much of the peace of society depend upon it. As it is but the evidence of what has been transacted by the court, it should show the truth upon its face. To do this the court must see that nothing is put upon it not ordered by it, and nothing omitted which they have ordered." Of like import is Foster v. Woodfin, 65 N.C. 29: "Whenever, by any accident, there has been an omission by the proper officer to record any proceeding of a court of record, the court has the power, and it is its duty on the application of any person interested, to have such proceeding recorded as of its proper date. Phillipse v. Higdon, Bus., 380. Such an amendment differs materially from one for the purpose of putting into a process, pleading, or return, something which was not in it originally. An amendment for that purpose will not, in general, be allowed where the rights of third persons will be affected. But no subsequent dealings by third parties can impair the right of a party to have the record of a past proceeding made to speak the truth as to what was done. A court cannot admit that any one can acquire a legal right to perpetuate a falsehood on its records, whether it be one of assertion, or of omission only." And in Hearne v. Comrs., 188 N.C. 45, Hoke, C.J., writing the opinion, the Court said: "In the absence of some provision of law that in order to the validity of their action an order of a board of commissioners, or contract made by them, should be presently put upon the minutes or duly entered thereon, such an entry is not to be regarded as essential, and mere failure of the clerk of the board to keep the minutes properly is not a fatal defect. Under ordinary circumstances the minutes may be perfected by the proper officer nunc pro tunc, and when a contract or authority to make it is not otherwise required to be in writing, and in suits where the commissioners are parties, their action can be proved by parol and the minutes made to show the facts of the matter. Charlotte v. Alexander,173 N.C. 515; Houser v. Bonsal, 149 N.C. 51. In R. R. v. Reid, 187 N.C. 320, to which we are cited by counsel, there was an effort to make substantial alterations of the minutes of the board of county commissioners in a suit between third parties, and holding that this could not be done except on application to the board to correct their minutes or in a suit where the said board being parties, were given opportunity to be heard and would be bound by the decree, the cause was remanded to the end that the commissioners be made parties. Here, however, the suit is against the commissioners, and the court has full jurisdiction to award relief and direct an amendment of the minutes so as to show what their action truly was. The court below, therefore, correctly ruled that parol evidence of the resolution of the commissioners touching this *Page 385 
matter should be received and appellant's first exception is disallowed." See R. R. v. Forbes, 188 N.C. 151.
It is suggested in the appellants' brief that the resolutions setting out the complete proceedings of the board should not have been admitted in evidence because they had not been specifically pleaded in the answer. The pleadings sufficiently point out the necessity of correcting the minutes; but the resolutions offered by the defendants were evidentiary only, and evidence as a rule need not be pleaded. Apart from this, the plaintiffs' criticism is met by the Court's statement of the law in Walton v. Pearson,85 N.C. 34, 48: "It is the duty of every court to supply the omissions of its officers in recording its proceedings and to see that its record truly sets forth its action in each and every instance; and this it must do upon the application of any person interested, and without regard to its effect upon the rights of parties, or of third persons; and neither is it open to any other tribunal to call in question the propriety of its action or the verity of its records, as made. This power of a court to amend its records has been too often recognized by this Court, and its exercise commended, to require the citation of authorities — other than a few of the leading cases on the subject. See Phillipse v. Higdon, 44 N.C. 380; Foster v.Woodfin, 65 N.C. 29; Mayo v. Whitson, 47 N.C. 231; Kirkland v. Mangum,50 N.C. 313." It was not only the privilege, it was the duty of the board of commissioners to see that their proceedings were accurately entered upon the minutes. C. S., 1310.
We concur in his Honor's conclusion that the contract between the defendants was executed on 8 February, 1927, and that its obligation was not impaired by the act which was ratified on 4 March. Indeed, the counsel for the appellants does not contend or intimate that this act is retroactive in its effect.
As another reason for not enforcing the contract the plaintiffs urge a resolution adopted by the commissioners of Johnston County on 6 April, 1925. In substance the resolution was as follows: Upon petitions presented it was ordered that bonds of Johnston County in the sum of $500,000 be sold and taken over by the State Highway Commission without interest in accordance with the contract between them, the terms of which were that the bonds were to be retired out of the county's pro rata part of the next bond issues to be made by the State for road purposes. The order was made on condition that if by Monday noon, 13 April, 1925, the petitioners supplemented the petitions theretofore filed with a sufficient number of qualified voters to total six thousand the order was to become absolute and the contract was to be executed. Pursuant to this resolution the defendants on 14 April, *Page 386 
1925, mutually executed a contract, by the terms of which the commissioners agreed to advance or lend to the State Highway Commission the sum of $500,000, and the commission agreed to refund without interest, "from issues of bonds for the construction of State highways that may be authorized by the next, any, or all subsequent General Assemblies, any and all sums requisitioned from and advanced or expended by the board under this contract in an amount not to exceed Johnston County's pro rata share of such bond issue or issues as hereinafter authorized by the General Assembly."
In the contract executed by the defendants on 8 February, 1927, the board of commissioners consented that any funds which the Highway Commission was obligated to repay under the first contract should be applied by the commission to the construction of two roads which the commission was to take over and include in the State highway system — one extending from Smithfield in the direction of Clinton to the Sampson County line, the other from route 22 northeast of Smithfield in the direction of Zebulon to the Wake County line. The commissioners waived any priority that Johnston County had under the terms of the first contract to the extent of the amount required to construct the two roads, not to exceed $500,000; and the commission accepted the roads for inclusion into the highway system and agreed to construct them as rapidly as practicable from funds which, except for the waiver referred to, would be available for repayment to Johnston County under the former contract.
The plaintiffs say that the contract of 8 February, 1927, is invalid, resting their argument chiefly on the order made by the commissioners on 6 April, 1925. They assert that in this order the board of commissioners agreed with certain citizens of Johnston County that the bonds issued in 1925 should be "retired out of Johnston County's pro rata part of the next bond issues made by the State for road purposes," and that approximately this sum now is or soon will be available for this purpose. It is obvious that this resolution did not create an enforceable contract between the board of commissioners and the six thousand petitioners therein referred to. The petitions are not set out in the record, but the recital in the resolution represents them as praying the commissioners to lend the State Highway Commission the sum of $500,000 "to be raised by a bond issue for the purpose of lending temporary aid" to the commission in constructing the proposed road. So far as the record discloses the petitions were silent as to the time the loan was to be refunded. They were in the nature of recommendations and were evidently understood and treated by the board. The order or resolution did not purport to be an agreement between the board and the petitioners *Page 387 
and was wanting in the essential elements of a contract. If, notwithstanding the resolution, the commissioners had refused to make this contract with the Highway Commission, the petitioners could not have compelled its execution. In these circumstances the parties had as clear a legal right to modify their contract as they first had to make it. In the supplemental agreement the expediency, if not the necessity of the modification, is pointed out. It is there said that within the next two years approximately $500,000 will accrue to the credit of Johnston County out of the bond issue authorized by the General Assembly at its last session; that to have as much mileage as possible maintained by the State Highway Commission will be an advantage to the county; that the construction of the two roads to the Sampson and Wake lines is a public necessity; and that the interest of Johnston County, no less than public necessity, requires that these roads be constructed at the earliest possible date.
When the contract of 8 February was executed the supervision and control of the roads in Johnston County and responsibility for their construction and maintenance were committed to the board of commissioners. Lassiter v.Comrs., 188 N.C. 379. If the contract had not been modified and the proposed roads had not been taken over by the Highway Commission the cost of their construction would have been a charge upon the county and a necessary expense not requiring the approval of a popular vote. It is apparent that the cost would be not less than the amount to be allocated to the county under the issues of bonds authorized. The bonds outstanding mature serially from 1932 to 1941; the bondholders therefore are not calling for their money. To what extent would the plaintiffs be profited if the board of commissioners should put into a sinking fund the amount allocated to the county and forthwith levy a tax for the purpose of raising a like sum with which to meet the "public necessity" of building the proposed roads? We are convinced that in consenting to a modification of the former contract the commissioners were not only within their legal rights, but according to the recitals in the later contract had in mind the single purpose of promoting the welfare of the county. In our opinion the judgment should be affirmed.
It may be noted in conclusion that all transactions of this kind entered into after 4 March, 1927, will be subject to the provisions of the recent act. Laws 1927, ch. 95.
Affirmed. *Page 388