STATE OF NEBRASKA EX REL. CHARLES E. SCHULER,
APPELLANT, V. FLOYD DUNBAR ET AL., APPELLEES.

302 N.W.2d 674

Filed February 20, 1981. No. 42976.

George Rhodes for appellant.

Joseph M. Casson for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The relator, a citizen and taxpayer of Loup County, Nebraska, brought this action in the District Court for Loup County, Nebraska, under the provisions of Neb. Rev. Stat. § 84-1414(3) (Reissue 1976), against Floyd Dunbar, Robert Schrup, and Glen Pollard, the persons who constitute the board of county commis-

sioners of Loup County, Nebraska, to have declared void an act of the commissioners taken on January 3, 1978, setting salaries of various county officials for the year 1979. The basis for the claim of nullity is Neb. Rev. Stat. § 84-1413(2) (Reissue 1976), which provides: "Any action taken on any question or motion duly moved and seconded shall be by roll call vote of the public body in open session, and the record shall state how each member voted, or if the member was absent or not voting."

The relator introduced certain documentary evidence and called the defendant Dunbar as his witness. The defendants called the relator as their witness in an apparent effort to establish estoppel as a defense. That defense is not urged in this court.

The trial judge found that "the Defendants did take a roll call vote on their action regarding the setting of salaries for Loup County officers and same was recorded in the minutes of Defendants' January 3, 1978 meeting." The determinative issue before us on this appeal is whether the evidence supports the above finding.

The action attacked, as described in the minutes, was as follows: "The Board set the following Salaries for County Officials for the term beginning January 1979 and the amount in parenthesis represents the present salaries:

| "Treasurer | 6700.00 | (6000.00) |
| "Service Officer | 600.00 | (600.00) |
| "County Clerk | 9000.00 | (8000.00) |
| "Sheriff | 7850.00 | (6850.00) |
| "Attorney | 6700.00 | (6000.00) |
| "Commissioners | 3000.00 | (2400.00)" |

Nothing in the original minutes of the January 3, 1978, meeting indicates that a motion was made and seconded, that there was a rollcall vote, or that votes were recorded in any manner. The introductory portion of those minutes states that the members of the board, the three defendants in this action, were present.

Other documentary evidence, offered by the relator and received without objection, shows that at the meeting of January 10, 1978, "Minutes of the January 3, 1978 meeting were read and approved." Additional documentary evidence, also received without objection, indicates that at a meeting of the board of commissioners on January 15, 1979, after this action had been commenced, the following action was taken: "Motion made by Pollard, seconded by Schrup the [sic] the minutes of the January 3, 1978 meeting of the Loup County Commissioners be corrected to reflect the vote of the Board on the action taken in setting the salaries of the county officials for the terms of office beginning January 4, 1979, said vote being yes, unanimous." The above-quoted words were apparently then typed at the bottom of the minutes of the January 3, 1978, meeting, under the apparently previously affixed signature of the county clerk. On the margin opposite the quoted words appeared, in script, the underscored words: "As corrected January 15, 1979."

During the direct examination of defendant Dunbar by relator's counsel, the following testimony was elicited:

"Q. Could you explain the procedure which you customarily follow when you audit and allow claims, Mr. Dunbar?

"A. On the salary claims we — it is understood that they are approved but the others — you know — like the road claims and all of them they are reviewed and we sign them and anything that needs hashed over we hash it over to make sure they are legitimate claims."

Earlier in the testimony, counsel had called to the attention of the witness the language of paragraph 6 of the defendants' amended answer, as follows: "Defendants allege that the Loup County Board of Commissioners, with the actual or constructive knowledge of the relator, have audited and allowed claims against Loup County in substantially the same manner in

excess of one year prior to and including the June 19, 1978 meeting of the said Board and that by relator's failure to previously object to such alleged irregularities, relator is guilty of laches," and asked the following question:

"Q. Now, are you admitting there you failed to record a roll call vote on the taking of a motion to allow the claim for more than a year prior to the filing of this action?" At that time, the defendant's counsel made objection on the grounds that the open meetings law made certain violations crimes and that the defendant was being asked to incriminate himself in violation of the fifth amendment. The court asked the witness if he desired to invoke the fifth amendment. He said he did, and the court sustained the objection.

Counsel then asked a question concerning the taking and recording of a rollcall vote on the motion to allow claims. Objection was made by defendant's counsel and the objection was sustained. The relator's counsel then apparently abandoned his attempts to establish violations by Dunbar's own testimony.

On offer of the relator and over objection by defendants, there was received in evidence copies of various minutes covering the period May 16, 1977, to January 16, 1978, which indicate that claims were approved and allowed in substantially the following language: "motion to audit and allow claims, carried." Then followed a list of claims, including, in some instances, claims for salaries. There was no indication at any of these meetings that the roll had been called and the vote recorded.

We summarize the positions of the parties insofar as they relate to the point on which we decide the case. The relator contends the evidence shows that no rollcall vote was called and recorded on the motion of January 3, 1978, and that the purported correction made more than 1 year later is void.

The defendants assert that the minutes of a public body may be corrected, nunc pro tunc, to show what

actually occurred, and that this action may be taken either by the body itself or by its recording officer, in this case the county clerk. They further rely on the presumption that public officers have acted in accordance with the law. They claim the relator has failed to sustain his burden of showing that a rollcall vote was not taken.

Our consideration of the merits in this case must begin with an examination of the pertinent statutory provisions. Section 84-1413(2) specifically and clearly provides that when a governing public body (as defined by Neb. Rev. Stat. § 84-1409 (Reissue 1976)) acts on any question or motion duly moved and seconded, it shall do so by rollcall vote in an open session and the record shall state how each member voted, or if the member was absent or not voting.

Section 84-1414 provides that any motion, resolution, rule, regulation, ordinance, or formal action taken in violation of certain statutory provisions, including § 84-1413, shall be void. It further grants to any citizen the right to commence an action in the District Court for the purpose, among others, of declaring an action of the governing body void. It also provides penal sanctions for violations of the act committed knowingly. Actions to obtain a declaration of nullity must be commenced within 1 year of the governing body's final action.

It is to be noted that not only does § 84-1413(2) require a rollcall vote in open session but it also requires that "the record shall *state how each member voted, or if the member was absent or not voting.*" (Emphasis supplied.)

Neb. Rev. Stat. §§ 23-1301 and 23-1302 (Reissue 1977) make it the duty of the county clerk to keep the records of the board of county commissioners and "[t]o record in a book provided for that purpose all proceedings of the board."

The statutory provision makes it plain that actions by a public body in violation of certain portions of the

act are void. The concept that when the Legislature makes a certain requirement mandatory, failure to comply makes the action void, is not new. Statutes of this state have long required that "yeas" and "nays" shall be called and recorded whenever the governing body of a city enacts an ordinance, bylaw, or resolution entering into a contract. When such requirement is not met, the action is void. *Payne v. Ryan*, 79 Neb. 414, 112 N.W. 599 (1907); *Beverly Land Co. v. City of South Sioux City*, 117 Neb. 47, 219 N.W. 385 (1928); *City of Valentine v. Valentine Motel, Inc.*, 176 Neb. 63, 125 N.W.2d 98 (1963).

The defendants, however, rely upon the principle that public officers are presumed to have acted lawfully in performance of their duties, and that public records may be corrected, nunc pro tunc, to conform to the facts and to correct clerical errors. They argue that when these two principles are applied to the present case, the corrective action taken on January 15, 1979, remedies the deficiency and supports the trial court's finding. We must determine whether these principles are applicable here.

The purpose of a nunc pro tunc correction is to make the record speak the truth. Its purpose is not to correct oversights or failures in the performance of mandatory acts. *Beverly Land Co. v. City of South Sioux City, supra; City of Valentine v. Valentine Motel, Inc., supra.*

The relator produced the original minutes. The minutes do not indicate that a rollcall vote was made, nor do they show how each member voted. The record indisputably shows that the rollcall vote, if taken, was not recorded until more than 1 year later. Relator also introduced the minutes of other meetings showing a practice of not recording rollcall votes. Inquiry of a witness who presumably had knowledge of the facts as to what actually occurred on January 3, 1978, was prevented by the fifth amendment objection before the subject could be reached.

We note also that where a defendant in a civil case refuses to testify on the ground that the evidence may

incriminate him, the trier of fact may draw an adverse inference from his refusal. *Eldridge v. Herman,* 291 N.W.2d 319 (Iowa 1980); *Morgan v. United States Fidelity & Guaranty Co.,* 222 So. 2d 820 (Miss. 1969). The relator thus made a prima facie showing that a mandatory requirement had not been complied with. Was the corrective action itself, taken together with the presumption that a public official has acted lawfully, sufficient to overcome that prima facie showing and thus support the trial judge's factual findings?

The trial judge's finding that the rollcall vote was taken and recorded in the minutes was, as appears from comments made by him, based upon two factors: First, his interpretation of Dunbar's testimony, which we earlier quoted, concerning what took place when claims were allowed; and, second, his feeling that the corrective action taken in January 1979 satisfied the recording requirement under the nunc pro tunc principle. Dunbar's testimony related to a meeting which took place several months after the meeting of January 3, 1978. Its substance was that claims were discussed before they were allowed. It in no way pertained to what had occurred on January 3, 1978. There is, therefore, no testimony that a rollcall vote was taken, nor any testimony as to how a particular member voted or whether a member abstained. This leaves the corrective action of January 15, 1979, as the sole support for the trial court's finding. Is that sufficient? We think not, for if it were, the statute would be effectively emasculated. It is clear that the Legislature intended the statute to be mandatory; otherwise, it would not have provided that action taken in violation of the statute is void. This court is not free to disregard statutory requirements which are clearly within the legislative power to prescribe.

· The primary obligation for properly recording proceedings by a board of county commissioners rests under statute upon the county clerk. §§ 23-1301 and 23-1302. Nonetheless, the open meetings act clearly places some supervisory obligations upon the commis-

sioners. When, at the meeting of January 10, 1978, the commissioners approved the minutes of the meeting of January 3, 1978, they could have observed that the minutes did not show that a rollcall had been taken, nor how the individual members had voted, nor whether there were abstentions. A correction to conform with the actual facts could have been made at that time.

We have previously held that the presumption that a public official has acted in conformity with the law is not sufficient to meet a statutory requirement that action mandated by statute be spread on the record. *Hull v. City of Humboldt*, 107 Neb. 326, 186 N.W. 78 (1921); *City of Valentine v. Valentine Motel, Inc., supra*.

The first-cited case involved the validity of an ordinance. The applicable procedural statute required that "'on the passage or adoption of every by-law or ordinance, the yeas and nays shall be called *and recorded*.'" (Emphasis supplied by the court.) *Hull, supra* at 328, 186 N.W. at 79. The statute also required the reading of the ordinance on final passage, but made no specific provision that the fact of reading be recorded. The court held that, since the statute did not specifically require the recording of the fact of reading, the fact that the mandatory requirement of spreading the yeas and nays on the record had been met was sufficient to raise the presumption that the ordinance had been read.

*City of Valentine v. Valentine Motel, Inc., supra*, involved a statute (Neb. Rev. Stat. § 17-407 (Reissue 1962)) regulating the passage of an annexation resolution or ordinance, which provided: "'[T]he resolution, and the vote thereon, shall be spread upon the records of the council or board.'" *City of Valentine, supra* at 64, 125 N.W.2d at 100. The record of the minutes showed that the resolution of annexation had been offered and seconded. The resolution was contained in the minutes. No vote on the ordinance was recorded. About 6 months later, after litigation attacking the validity of the ordinance had been commenced, the

council adopted an amendment, nunc pro tunc, to show that the vote had been taken and spread on the record. This court held: "The provisions of such a statute requiring the spreading upon the record of the council of the vote thereon were intended to require an indisputable record of the action actually taken, and so that the public might have an opportunity to know how the elected officials voted thereon. . . . A city council may, under some circumstances, correct its own record, nunc pro tunc, to show the adoption of a resolution or ordinance and to record the truth of how it was voted upon. It may not, however, by such action show that the separate requirement that these actions be spread upon the record of the minutes of the council was performed prior to the time that the spreading upon the minutes actually took place." (Syllabus of the court.) The opinion in the above-cited case sufficiently develops the rationale for the holding.

We hold in this case that the provision of § 84-1413(2), "the record shall state how each member voted, or if the member was absent or not voting," cannot be satisfied by a nunc pro tunc amendment showing the recording of the vote in the minutes was performed prior to the time the actual recording in the minutes took place.

The cause is remanded for further action in accordance with this opinion.

REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., dissenting.

If, in fact, the majority opinion holds, as I believe it does, that the provisions of the open meetings law (Neb. Rev. Stat. §§ 84-1408 to 84-1414 (Reissue 1976)) preclude a public body from correcting its own records, nunc pro tunc, to reflect what in fact took place, I must respectfully dissent. I believe that the majority in this case has both misconstrued the open meetings law and the evidence in this record.

It is clear beyond dispute that at common law a municipal council may at any time correct its minutes

to reflect the truth. The general rule as stated in 56 Am. Jur. 2d *Municipal Corporations* § 179 (1971) is as follows: "A municipal council may, at a subsequent meeting, if no intervening rights of third persons have arisen, order the minutes or record of its own proceedings at a previous meeting to be corrected according to the facts, so as to make them speak the truth, although the record has once been approved."

Many jurisdictions which have been called upon to examine this proposition have reached such a conclusion. In *Williams v. Longtown School Dist. No. 71 of Perry Co.*, 468 S.W.2d 673, 675-76 (Mo. App. 1971), the court said: "The board of directors of a school district has the power to correct the record of the proceedings had at a previous meeting so as to make them speak the truth and especially when the correction consists of supplying some omitted fact or action and is done, not to contradict or change the original record, but to have the record show that a certain action was taken or thing done which the original record fails to show. Parol evidence is also admissible for the same purpose."

Likewise, in *State ex rel. Wineholt v. LaPorte Superior Court No. 2*, 249 Ind. 152, 157, 230 N.E.2d 92, 95 (1967), the court there said: "There is no question that a County Council has a right to correct the minutes of its council meetings and make *nunc pro tunc* entries where errors have occurred by the secretary in properly recording the same. Modifications and amendments may be made where no intervening vested rights are involved."

For other cases supporting the general rule that county boards and councils have the authority to amend or correct their minutes, nunc pro tunc, see the following: *Olympian-Tribune Pub. Co. v. Byrne*, 28 Wash. 79, 68 P. 335 (1902); *R.R. v. Cherokee County*, 195 N.C. 756, 143 S.E. 467 (1928); *Oliver v. Highway Commission*, 194 N.C. 380, 139 S.E. 767 (1927); *R.R. v. Forbes*, 188 N.C. 151, 124 S.E. 132 (1924); *Marengo*

*County v. Barley*, 209 Ala. 663, 96 So. 753 (1923); *Jeffers v. Wharton*, 240 Ala. 21, 197 So. 358 (1940); *Bathurst v. Course*, 3 La. Ann. 260 (1848); *The People v. Wabash Ry. Co.*, 314 Ill. 513, 145 N.E. 733 (1924); *The People v. C. & E.I. Ry. Co.*, 314 Ill. 382, 145 N.E. 714 (1924).

Moreover, the authorities are clear that "[a]fter the record has been amended, it is entitled to the same respect as an original record." 56 Am. Jr. 2d *Municipal Corporations* § 179 at 231 (1971). See, also, 20 C.J.S. *Counties* § 91(c) (1940).

For the action of the county board, as reflected by the minutes herein, to be invalid and for the decision of the trial court finding the action valid, we must therefore find something in the open meetings law which compels that result. In *Egbert v. Wenzl*, 199 Neb. 573, 576, 260 N.W.2d 480, 482 (1977), we said: "Statutes are not to be understood as affecting any change in the common law beyond that which is clearly indicated." Likewise, see, *Paulsen v. Courtney*, 202 Neb. 791, 277 N.W.2d 233 (1979); *Davis v. Walker*, 170 Neb. 891, 104 N.W.2d 479 (1960). I find nothing in the open meetings law or the evidence in this case which justifies the conclusion reached by the majority. Neb. Rev. Stat. § 84-1413 (Reissue 1976) provides that "[a]ny action *taken* on any question or motion duly moved and seconded shall be by roll call vote of the public body in open session, and the record shall state how each member voted, or if the member was absent or not voting." (Emphasis supplied.) This obviously means the entire record and not just any single line in the record.

Likewise, § 84-1414 provides: "Any motion, resolution, rule, regulation, ordinance or formal action of a public body *made or taken* in violation of . . . shall be declared void by the district court." (Emphasis supplied.) The act which will result in a declaration of invalidity is the failure to *make* or *take* the vote in accordance with the statute, not, as suggested by the

majority, the failure to *record* the vote. Nothing in the open meetings law has made the failure to record the vote, if in fact it was properly taken, grounds to nullify the action of the public body.

The particular minutes under attack provide that Commissioners Schrup, Dunbar, and Pollard were present. They are all of the commissioners. Moreover, they now provide: "Motion made by Pollard, seconded by Schrup, that the minutes of the January 3, 1978 meeting of the Loup County Commissioner be corrected *to reflect* the vote of the Board on the Action *taken* in setting the salaries of the county officials for the terms of office beginning January 4, 1979, *said* vote being *yes, unanimous.*" (Emphasis supplied.) To be sure, the language is not as articulate as one might desire. Nevertheless, no one can reach any other conclusion but that the "vote being yes, unanimous" meant that Commissioners Schrup, Dunbar, and Pollard all voted yes. In my view, not only has the spirit of the open meetings law been met but I believe that the letter has likewise been met. To hold otherwise, as we are here doing, is to impose technical requirements upon part-time county commissioners beyond that which should be made and far in excess of anything the open meetings law was intended to require. The majority is now saying that persons who relied upon a salary increase and who ran for office in reliance on that salary increase should now be denied their just compensation because the minutes of the meeting of the county commissioners were not as artfully drafted as they might otherwise have been. Such a conclusion is neither required nor desirable.

There is no evidence in this record to discredit the record of the commissioners' meeting. The relator concedes that he does not know what in fact took place at the meeting. We are called upon to set aside an official record based upon the fact that a single county commissioner, at the direction of his lawyer, sought to exercise the fifth amendment for whatever

reason he may have chosen to do so. There is, however, not a single shred of evidence that a vote was not taken on the date and at the meeting in question. Yet, without hesitation, we set aside that action and ignore the finding of fact made by the trial court, which had the opportunity to see and observe the witnesses.

The trial court specifically found that the county board did take a rollcall vote on its action regarding the setting of salaries for Loup County officers on January 3, 1978. I see no basis for disregarding that finding and I certainly find no legal basis for declaring that the open meetings law precludes a public body from lawfully reflecting what in fact took place. To be sure, if it did not take place, such could not be done after the fact. That is not the record we have before us here and is not the ruling we are asked to make. I am not unmindful of our earlier decisions in *Payne v. Ryan*, 79 Neb. 414, 112 N.W. 599 (1907); *Beverly Land Co. v. City of South Sioux City*, 117 Neb. 47, 219 N.W. 385 (1928); and *City of Valentine v. Valentine Motel, Inc.*, 176 Neb. 63, 125 N.W.2d 98 (1963). They can be distinguished if one attempts to do so, but admittedly the distinctions are narrow.

It appears strange to me for the court to conclude that if an erroneous statement is "spread upon the records," it may be corrected, nunc pro tunc, to reflect the truth; but if, in fact, the legally required action was taken but omitted from the record, a correction cannot be made nunc pro tunc. I find no basis for that rule and do not believe the above-cited cases holding such to be the rule were correctly decided. I would overrule *Payne v. Ryan, supra; Beverly Land Co. v. City of South Sioux City, supra;* and *City of Valentine v. Valentine Motel, Inc., supra,* and affirm the judgment of the trial court.

MCCOWN and BRODKEY, JJ., join in this dissent.