VILLAGE OF MCGREW,
A MUNICIPAL CORPORATION, APPELLEE, V.
ROGER STEIDLEY, APPELLANT.

305 N.W.2d 627

Filed May 8, 1981.   No. 43305.

Holtorf, Kovarik, Nuttleman & Ellison, P.C. and

James M. Mathis and Alan D. Carlson for appellant.

Philip M. Kelly of Winner, Nichols, Meister & Douglas for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Roger Steidley, defendant and appellant herein, appeals to this court from a decree entered by the District Court of Scotts Bluff County, Nebraska, enjoining him from maintaining a mobile home on property located in the Village of McGrew, Nebraska. The court ordered the defendant to comply with village ordinance No. 44, a zoning ordinance, which specifies certain requirements for the installation and maintenance of mobile homes within McGrew. We reverse and remand.

McGrew, Nebraska, is a rural community of approximately 85 people located along the North Platte River 20 miles southeast of Scottsbluff. It appears that on August 5, 1976, the village board of McGrew met to organize a planning commission for the village in order to investigate and develop plans for the long-term growth of the community. The planning commission members were appointed by the village board, and a map of McGrew was forwarded to the State Office of Planning and Programming so it could aid in the completion of the project. Various work sessions followed in which the planning commission considered alternative plans for development and village regulations.

The planning commission drafted and approved a comprehensive development plan which, after a public hearing, was recommended to the village board for adoption. The certificate of the planning commission, dated May 9, 1977, and received in evidence at the trial of this matter, recites: "The Planning Commission of the Village of McGrew, Nebraska,

hereby recommends to the Village Board of McGrew, Nebraska, the acceptance of the Comprehensive Plan and adoption by the Village Board. The Comprehensive Plan shall be known as 'The Comprehensive Plan for McGrew, Nebraska.' The Planning Commission held a public hearing on <u>May 9, 1977</u> in the <u>Fire Hall</u> in McGrew, Nebraska, and by a roll call vote of <u>6</u> ayes and <u>0</u> nays voted to accept the Comprehensive Plan and recommend to the Village Board of McGrew, Nebraska." However, as reflected by the minutes of that meeting, the actual motion made and passed by the members of the planning commission was "to pass the Comprehensive Plan of *Zoning* Regulations on to the Village Board. . . ." (Emphasis supplied.) The comprehensive development plan itself, entitled Community Development Plan, was introduced at the trial as exhibit 4. Exhibit 4 contains not only the comprehensive development plan, which complied in full with the requirements of such plans as set out in Neb. Rev. Stat. § 19-903 (Reissue 1977), but also contains the zoning regulations which were the subject matter of ordinance No. 44, admitted as exhibit 1 at trial. Exhibit 1, however, as adopted by the Village of McGrew, was entirely a zoning ordinance and does not contain the development plan recommended by the planning commission. The minutes of the village board meeting held on July 6, 1977, indicate that the board approved by rollcall vote the proposed zoning regulations as village ordinance No. 44. The minutes do not reflect that any action whatsoever was taken with regard to that part of exhibit 4 which constituted the comprehensive development plan prepared by the planning commission.

On Sunday, July 10, 1977, 4 days after the village board adopted ordinance No. 44, defendant Steidley brought a 70-foot-long mobile home into the Village of McGrew, and placed it crosswise on three lots, each of which measured 25 feet in width and 133 feet in depth. It appears that Steidley had tied down

and blocked the mobile home foundation, hooked up the utilities, and had placed a skirt on the backside of the home by July 12, 1977, when he was advised by William Van Pelt, chairman of the village board, that he had not positioned the mobile home in accordance with the requirements set forth in ordinance No. 44. Steidley testified, however, that he had previously been told by other members of the board that his mobile home could be placed on the lots as he had positioned it and that no ordinances or regulations had been passed with regard to its placement.

On March 3, 1978, the Village of McGrew filed a petition in the District Court of Scotts Bluff County, praying that "the Defendant be enjoined from maintaining his mobile home on the premises described herein in violation of the ordinances of the Village of McGrew and that a mandatory injunction issue requiring him to remove the same or to position the mobile home in compliance with and to construct the foundation and tie-downs for the same in compliance with the ordinances of the Village of McGrew, for the cost of this action and for such other and further relief as the Court may deem just and equitable." In his answer, filed March 21, 1978, the defendant challenged the validity of ordinance No. 44, and the proceedings of the planning commission and village board which culminated in its enactment.

This matter came to trial on November 29, 1979. The record reveals, however, that the evening before the trial was to commence, to wit, on November 28, 1979, a special meeting of the village board of McGrew was held, at which meeting a resolution was adopted to amend the minutes of the July 6, 1977, meeting to read as follows: "A motion was made to adopt the Comprehensive Development Plan for the Village of McGrew. Motion approved by roll call vote." At the trial, which commenced the following day, the Village of McGrew called as its first witness Katherine Teppert, who was the village clerk for the Village of

McGrew. She testified with reference to the organization of the planning commission on August 5, 1976, and the adoption of the comprehensive plan by the planning commission and the recommendation to the village board that they accept the comprehensive plan, on May 9, 1977. She also testified with reference to the meeting held on July 6, 1977, as follows: "In July we held a meeting where we passed the Comprehensive Plan and the zoning regulations for the village and adopted them." She was asked whether there was an error in the minutes of the meeting of July 6, 1977, and replied that there was and that the minutes should have read "Comprehensive Planning and Zoning" instead of just "Comprehensive Zoning." She also testified that the village board had taken action to correct the minutes; and when asked when that action was taken, replied: "Last night, November 28th." She testified as to the previous evening as follows: "We had a motion to amend the July 6th minutes and we amended them to read that the motion was made and approved to accept both the planning and the zoning regulations." We point out that the actual minutes do not bear out this statement. As quoted above, they merely refer to adopting the "Comprehensive Zoning Ordinance." She later testified, however, that it was her recollection that the "Comprehensive Plan was adopted by the Village." She later identified this plan as exhibit 4, which she contended was adopted on July 6, 1977. She also identified exhibit 1, ordinance No. 44, which she stated was the comprehensive plan for the Village of McGrew regulating and restricting certain ordinances. She was specifically asked: "Is that the Comprehensive Zoning Plan?" She replied: "Yes, it is." However, the minutes of the meeting of the village board which was held on July 6, 1977, are also in evidence in this case, and they reveal that at the meeting a motion was made and seconded to accept the "Comprehensive Zoning Ordinance for the Village of McGrew," which

they referred to in said minutes as "ordinance 44." The motion was approved by rollcall vote. Nothing was specifically referred to in the minutes of that meeting with regard to that portion of exhibit 4 which constitutes the comprehensive development plan.

Following the trial, at which Katherine Teppert, the village clerk, William Van Pelt, the chairman of the board, and Roger Steidley, the defendant, testified on behalf of the plaintiff, and no witnesses testified on the behalf of the defendant, the trial court, on December 10, 1979, found generally in favor of the plaintiff and against the defendant, and ordered that the defendant be enjoined from further violations of ordinance No. 44 of the Village of McGrew and from maintaining a mobile home on the property in question unless, within 60 days of the decree, he relocated the mobile home to comply with the setback requirements set forth in ordinance No. 44, and otherwise complied with the requirements of that ordinance.

In his brief on appeal, the defendant contends that since the trial court found generally in favor of the village, it necessarily had to find against the defendant on each issue raised by the trial below. Specifically, the defendant principally assigns as error: (1) The trial court erred in finding that ordinance No. 44 was a comprehensive development plan within the meaning of § 19-903; (2) The court erred in finding that the village had adopted a comprehensive development plan prior to attempting to exercise the zoning regulations; (3) The court erred in finding that ordinance No. 44 was a valid comprehensive development plan, because the words "development plan" were not included in its title; (4) The court erred in finding that ordinance No. 44 had been validly adopted, because it was not styled as required by Neb. Rev. Stat. § 17-613 (Reissue 1977); (5) The court erred in failing to find that ordinance No. 44 did not become effective until after defendant's mobile home was placed in its present position, and (6) The court erred in failing

to find that the ordinance had not been published as provided by law.

We begin our discussion of this matter by setting forth the applicable law governing the scope of our review on appeal. This court has held that what is in the public good as it relates to zoning ordinances affecting the use of property is, primarily, a matter lying within the discretion of the municipal body to which the power and function of zoning is committed; and that unless an abuse of this discretion has clearly been shown, it is not the province of this court to interfere. In passing upon the validity of zoning ordinances, an appellate court should give great weight to the determination of local authorities who are especially familiar with local conditions. However, in appeals from the District Court to the Supreme Court in suits in equity, on trial de novo this court will retry the issue or issues of fact involved and reach an independent conclusion as to what findings are required under the pleadings and the evidence, without reference to the conclusions reached in the District Court. *Dundee Realty Co. v. City of Omaha*, 144 Neb. 448, 13 N.W.2d 634 (1944); *Weber v. City of Grand Island*, 165 Neb. 827, 87 N.W.2d 575 (1958); *Bucholz v. City of Omaha*, 174 Neb. 862, 120 N.W.2d 270 (1963); *J. W. Auto Parts, Inc. v. City of Omaha*, 187 Neb. 624, 193 N.W.2d 281 (1971).

In order for this court to make the determination as to whether the Village of McGrew properly enacted ordinance No. 44, we must turn to the applicable statutory provisions which govern the matter before us. In this regard, Neb. Rev. Stat. § 19-901 (Reissue 1977) specifies the requirements for enacting zoning regulations as follows: "(1) For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative bodies in cities of the first and second class and in villages may adopt zoning regulations which regulate and restrict the height, number of stories, and size of buildings and

other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes.

"(2) Such powers shall be exercised *only after the municipal legislative body has appointed a planning commission, received from its planning commission a recommended comprehensive development plan as defined in section 19-903, adopted such comprehensive development plan, and received the specific recommendation of the planning commission on the adoption or amendment of zoning regulations.*" (Emphasis supplied.)

It is clear from the language found in § 19-901 that a comprehensive *development* plan (as defined in § 19-903) must precede the adoption of any zoning regulations by the village. We note that prior to 1967, neither § 19-901 nor § 19-903 contained the requirement that a comprehensive development plan be adopted by a community prior to enacting zoning regulations; rather, the statute only required that zoning regulations be made "in accordance with a comprehensive plan." See *City of Imperial v. Raile*, 187 Neb. 404, 191 N.W.2d 442 (1971). However, § 19-901 was amended in 1967, and now includes the requirement that a comprehensive *development* plan be adopted *before* the passage of any zoning regulations.

We must therefore turn to § 19-903 in order to determine whether the "Comprehensive Zoning Ordinance," adopted by the Village of McGrew as ordinance No. 44, constitutes a comprehensive *development* plan. Section 19-903 states as follows: "The regulations and restrictions authorized by sections 19-901 to 19-915 shall be made in accordance with a comprehensive development plan which shall consist of both graphic and textual material and shall be designed to accommodate anticipated long-range

future growth which shall be based upon documented population and economic projections. *The comprehensive development plan shall, among other possible elements, include:* (1) A land-use element which designates the proposed general distributions, general location, and extent of the uses of land for agriculture, housing, commerce, industry, recreation, education, public buildings and lands, and other categories of public and private use of land; (2) The general location, character, and extent of existing and proposed major roads, streets, and highways, and air and other transportation routes and facilities; and (3) The general location, type, capacity, and area served of present and projected or needed community facilities including recreation facilities, schools, libraries, other public buildings, and public utilities and services." (Emphasis supplied.)

Our review of ordinance No. 44, the "Comprehensive Zoning Plan" enacted by the Village of McGrew, convinces us that it does not contain those elements of a comprehensive development plan set forth in § 19-903(1) to (3). Rather, the ordinance states on its face: "AN ORDINANCE ESTABLISHING A COMPREHENSIVE *ZONING* PLAN WITHIN THE VILLAGE OF McGREW, NEBRASKA; AND WITHIN THE CORPORATE LIMITS OF SAID VILLAGE, *REGULATING AND RESTRICTING SIZE OF BUILDINGS AND OTHER STRUCTURES, THE SIZE OF THE YARDS, COURTS AND OTHER OPEN SPACES, THE DENSITY OF THE POPULATION AND THE LOCATIONS AND USE OF BUILDINGS, STRUCTURES AND LAND FOR TRADE, INDUSTRY, RESIDENCE AND OTHER PURPOSES;* ESTABLISHING SET-BACK BUILDING LINES; DIVIDING SAID VILLAGE INTO ZONING DISTRICTS AND WITHIN SUCH DISTRICTS REGULATING AND RESTRICTING ERECTION, CONSTRUCTION, RECONSTRUCTION, ALTERATION, SIZE, REPAIR AND USE

OF BUILDINGS, STRUCTURES AND LAND; PROVIDING THE PROCEDURE FOR THE ISSUANCE OF BUILDING PERMITS AND CERTIFICATE OF OCCUPANCY, PROVIDING FOR ENFORCEMENT OF SAID ORDINANCE AND PRESCRIBING PENALTIES FOR ITS VIOLATION." (Emphasis supplied.)

We note that the above italicized language taken from ordinance No. 44 comes verbatim from § 19-901, the statutory section governing the adoption of zoning ordinances and regulations. Ordinance No. 44 obviously fails to meet the statutory requirements set forth in § 19-903, and therefore cannot be considered to be a comprehensive *development* plan. Therefore, inasmuch as no comprehensive development plan was adopted by the Village of McGrew prior to the enactment of ordinance No. 44, as is required by § 19-901(2), we must conclude that ordinance No. 44 was not properly adopted as a zoning ordinance by the village board and is invalid under the terms of the aforementioned statutory provisions.

We now comment briefly upon the effect of the effort of the village board of McGrew to amend the minutes of the meeting held on July 6, 1977, to show that the board also adopted the comprehensive development plan at that meeting. The minues of the meeting held on that date do not reflect that the comprehensive development plan was adopted, but show that the comprehensive zoning plan was so adopted. We again point out that the special meeting to correct the minutes of the earlier meeting was held the night before the trial in this matter was to commence, which date was approximately 2 years and 4 months after the aforementioned meeting of the village board which adopted the comprehensive zoning plan. The general rules with reference to the right of a municipal governing body to amend its minutes of previous meetings is summarized in 62 C.J.S. *Municipal Corporations* § 409 d at 782-83, as

follows:

"The right of a municipal governing body to amend its minutes is very broad, at least in cases where, through inadvertence or misapprehension, a record has been made up defectively; . . . The power of the governing body to amend its minutes, however, is not unlimited or unqualified. The rule permitting an amendment of the minutes should be administered with caution, and the effect of omissions or irregularities in the proceedings of the council cannot be avoided under the guise of correction of the records. . . .

"If a correction is made in the minutes or records of a municipal governing body it should be made within a reasonable time. . . . A nunc pro tunc entry may be made on the minutes of a succeeding meeting; but in order for minutes to be amended nunc pro tunc the amendment must be based on written or other sufficient data of record, which must be such as itself to furnish evidence that the particular proceedings in fact took place." In this connection, see *Beverly Land Co. v.City of South Sioux City*, 117 Neb. 47, 219 N.W. 385 (1928).

The case of *City of Valentine v. Valentine Motel, Inc.*, 176 Neb. 63, 125 N.W.2d 98 (1963), involved the question of the power of a city council to amend its minutes nunc pro tunc, after the commencement of litigation, for the purpose of complying with the requirements of the applicable annexation statutes, which among other things required that to annex such territory the resolution and vote thereon "shall be spread upon the records of the council or board." In that case the court held that that requirement was a condition precedent which must be strictly complied with, and that the requirement that the record be kept and spread upon the records of the council at the time of its voting on the resolution was mandatory and jurisdictional in character. The court recognized the general rule that a city council may, under some circumstances, correct its own

records, nunc pro tunc, to show the adoption of a resolution or ordinance and to record the truth of how it was voted upon; but that it may not by such action show that the separate requirement that the action be spread upon the record of the minutes of the council was performed prior to the time that the spreading upon the minutes actually took place. In its opinion, this court stated at 68-69, 125 N.W.2d at 102: "We point out that on January 8, 1962, the next council meeting following December 11, 1961, the minutes were recorded and approved 'as written.' Apparent is the square application of the principles above announced. A property owner in the area to be annexed, or any interested citizen inspecting this public record, would be entitled to rely on the law and facts as then represented, and act accordingly on the basis that there was no legal adoption of the annexation resolution. To permit the *recording* of the fact of passage at a later time and for the purposes of litigation would be to permit the violation of the disclosure requirement of the statute as a condition precedent to annexation proceedings, would affect intervening rights of interested parties, and would open up an opportunity for fraud and uncertainty as to something that the very requirement of the statute was designed to prevent."

Also, in *Payne v. Ryan*, 79 Neb. 414, 417, 112 N.W. 599, 600 (1907), which case involved an application to a village board for a license to sell intoxicating liquors in the village, this court stated: "Appellee undertook to avoid the force of the record of the board of trustees relating to the attempted passage of the ordinance in question. Several days after the hearing before the village board, and after it had ordered the license to issue, a special meeting of the village board was called, and it proceeded to enter a *nunc pro tunc* order, whereby it caused a record to be made supplying the omissions in the record relative to the passage of the ordinance in question, notwithstanding that

15 years had elapsed since the attempted passage of the ordinance." The court held that under the evidence offered and adduced at the hearing the village of Exeter, at the time of the granting of the license, did not have any village ordinance authorizing the issuance of a license, and that the village board was therefore without power to issue the license.

Finally, in our recent case of *State ex rel. Schuler v. Dunbar, ante* p. 69, 74, 302 N.W.2d 674, 678 (1981), we stated: "The purpose of a nunc pro tunc correction is to make the record speak the truth. Its purpose is not to correct oversights or failures in the performance of mandatory acts," citing *Beverly Land Co. v. City of South Sioux City, supra;* and *City of Valentine v. Valentine Motel, Inc., supra.*

From our examination of the record, we are convinced that the Village of McGrew did not adopt the comprehensive development plan at or prior to the meeting of July 6, 1977, as required by the statutes of this state, before the enactment of zoning regulations, and that its efforts to do so by amending the minutes of that meeting 2 years and 4 months after such meeting, on the evening prior to trial, was a valiant but futile effort to correct the deficiency in its zoning ordinance.

In view of our conclusions as expressed above, both that ordinance No. 44 was a zoning ordinance and not a comprehensive development plan, and also that no comprehensive development plan was enacted by the Village of McGrew prior to the adoption of its zoning ordinance, we need not consider other assignments of error alleged by the defendant in his brief on appeal. We conclude that the decree of the District Court, enjoining the defendant from maintaining his mobile home on the property in question, must be reversed and the cause remanded with instructions to dismiss the plaintiff's petition.

REVERSED AND REMANDED WITH INSTRUCTIONS.

CLINTON, J., participated on briefs.

BOSLAUGH, MCCOWN, and CLINTON, JJ., concur in result.

KRIVOSHA, C.J., concurring in result.

I concur in the result reached by the majority in this case. I take a moment to write a separate concurring opinion so that the basis for my action in this case may be clear. I am in full accord with the majority's conclusion that the document considered by the village board of the Village of McGrew and approved by it at its meeting on July 6, 1977, was proposed zoning regulations and not a comprehensive development plan required to be adopted prior to the adoption of a zoning ordinance. Having reached that conclusion, I believe that the balance of the majority's opinion is mere dictum and may in fact cause some unnecessary confusion in the future.

The majority, in reaching its conclusion that the zoning regulations were improperly adopted, cites *Beverly Land Co. v. City of South Sioux City*, 117 Neb. 47, 219 N.W. 385 (1928), and *City of Valentine v. Valentine Motel, Inc.*, 176 Neb. 63, 125 N.W.2d 98 (1963). For reasons more particularly set out in my dissent in the case of *State ex rel. Schuler v. Dunbar*, *ante* p. 69, 302 N.W.2d 674 (1981), I believe that neither the *Beverly Land Co.* case nor the *City of Valentine* case is correct. They should not be followed, except with regard to those statutes which specifically provide that the manner of recording the minutes is a prerequisite to subsequent action to be taken by a governmental subdivision, such as that of an annexation. Such is not the case here. While I agree that the function of nunc pro tunc is to make the record speak the truth and not to correct oversights or failures, I do not believe that there is any time limit when such a correction may be entered. The effect of correcting the record may depend upon whether any intervening interests have accrued. That is not the same as saying that a record may not be corrected to honestly speak the

truth. When a record is so corrected, it dates back to the date the action was taken and should not be disregarded.